WILLIAM W. TOWNSHEND *vs.* REUBEN S. GOODFELLOW and another.

March 25, 1889.

**Specific Performance—Contract with Partnership—Form of Deed.—** A contract for the sale of lands made with a partnership firm, in the firm name, may be enforced in equity, and the deed will be decreed to be executed to the individual partners as tenants in common.

**Same—When Plaintiff (Vendor) is not Owner at Time of Contract.—** Where the vendor in such contract has no interest in the land which he agrees to convey, but enters into it as a mere speculation or venture, he is not deemed a *bona fide* contractor, and a court of equity will not lend him its aid in enforcing it. But one who has acquired an equitable title or interest in the land under an executory agreement may enter into another agreement for the sale thereof to a third party, without waiting until he has obtained a deed, and it will be sufficient if the sale is made in good faith, and the title is fully perfected at the time specified for the completion of the sale.

**Same—Where Title is not Marketable.—**Equity will not actively interfere to compel the specific performance of a contract for the sale of land in favor of the vendor, if there is such uncertainty about the title as to affect its marketable value. The court will not, in such case, compel its acceptance, and cast upon the purchaser the risk of litigation and the embarrassment of a questionable title.

This action coming on for trial in the district court for Hennepin county, before *Lochren, J.*, the defendants moved for judgment on the pleadings. The motion was granted, and the plaintiff appealed.

*Jelley & Hay*, for appellant.

*Julius E. Miner*, for respondents.

VANDERBURGH, J. This action is brought to enforce the specific performance of a contract for the sale and conveyance of real estate. The defendants, it appears, were partners doing business under the firm name of R. S. Goodfellow & Co. The contract was made between plaintiff as vendor, and the defendants as vendees, under the name of "R. S. Goodfellow & Co." It is not questioned that the contract was executed by the consent and authority of both defendants, who appear and answer in this action.

1. The contract was not invalid because so executed. It is enforceable in equity, and the deed will in such cases be decreed to be executed to the individual partners as tenants in common, or to the one specially named, who will, as between the partners, take the title as trustee. *Beaman* v. *Whitney*, 20 Me. 413, 420; *Chicago Lumber Co.* v. *Ashworth*, 26 Kan. 212; *Gille* v. *Hunt*, 35 Minn. 357, 361, (29 N. W. Rep. 2;) *Kellogg* v. *Olson*, 34 Minn. 103, (24 N. W. Rep. 364.)

2. At the date of the contract, October 11, 1887, the plaintiff had not acquired title to the land, but was a subpurchaser, holding a contract for the sale and conveyance thereof, dated October 7, 1887, executed by one Cora T. Mesick, who was the vendee in an executory contract for the sale of the same land, executed by the executors of John Copley, deceased, under and in pursuance of a power in the will of the latter, which contract was dated April 9, 1887. The testator, John Copley, died seized of the land so contracted to be conveyed. The contract in question here contains this stipulation: "If the title to said premises is not good, and cannot be made good within sixty days from date hereof, this agreement shall be void. But if the title to said premises is now good, or is made good in my name within sixty days, and said purchaser refuses to accept the same, said one dollar shall be forfeited. But said forfeiture shall in no way affect the rights of either party to enforce the specific performance of this contract." Within 60 days from the date of the con-

tract the executors of Copley, at the request of Cora Mesick, and in fulfilment of her contract with plaintiff, executed and delivered to plaintiff, in due form, a deed with warranty and full covenants of the premises, purporting to convey the same to him; and thereupon the plaintiff, on the 10th day of December, 1887, duly executed and tendered his deed of the premises to defendants in fulfilment of the contract, but they refused to receive the same, or to fulfil on their part. The defendants contend that the court ought not to enforce the contract in favor of the plaintiff vendor, because it appears that at the time the contract was made he had no title to the premises, and that equity will not actively interfere to aid a party who makes a contract to sell lands of which he is not the owner.

The rule as insisted on by the defendants is only applicable where a party has no interest in the lands which he agrees to convey, but volunteers to enter into a contract as a mere venture. Such a transaction will not be sanctioned by a court of equity, because it is a mere speculation, and one who speculates upon that of which he has no control or the means of acquiring it is not a *bona fide* contractor. But the general rule is that, where a contract is entered into in good faith, it is not necessary that the vendor be actually in the situation to perform it at the time it is entered into, provided he be able at the proper time to place himself in that situation. Imperfections in the title when the contract is made will form no ground of objection thereto, if removed before the time of completing the purchase. 1 Chit. Cont. (11th Ed.) 431; Will. Eq. Jur. 290; *Dutch Church* v. *Mott,* 7 Paige, 77; *Jenkins* v. *Fahey,* 73 N. Y. 355; *Langford* v. *Pitt,* 2 P. Wms. 629; *Dresel* v. *Jordan,* 104 Mass. 407, 416; *Moss* v. *Hanson,* 17 Pa. St. 379. And one who has an equitable estate merely under an executory agreement may offer the premises for sale without waiting until he has obtained a deed. *Tiernan* v. *Roland,* 15 Pa. St. 429.

But it is further suggested that in this case plaintiff was at the time a mere subpurchaser, having himself no contract with the executors, and both contracts remained wholly executory. Not being a party to the first contract, he is not bound by its terms, and could not compel the parties thereto to fulfil the same as between them-

selves, nor would the fact that they neglected to do so give him a right of action by virtue thereof. *McCarthy* v. *Couch*, 37 Minn. 124, (33 N. W. Rep. 777.) But he necessarily purchased the equitable title of the first vendee subject to that contract, although, as between him and the latter, he did not assume its obligations; and, having purchased the entire interest of the first vendee, equity will interfere to protect his interest and enforce a deed to him from the vendor holding the legal title, upon a proper showing and tender of performance of the conditions subject to which it is so held, if the application is seasonably made. When a contract is made for the sale of an estate in land, the purchaser is treated in equity as the owner, and as trustee of the purchase-money for the vendor, and the latter is considered the trustee of the legal title for the purchaser. He is not, however, completely or unconditionally so until the money is paid. Unless otherwise agreed, he holds both the possession and title until the money is paid or other conditions of the contract are fulfilled. So that a subpurchaser who has bought the equitable interest, although treated as equitable owner, takes his equitable title, not only subject to the conditions of his own contract, but also to those of the first contract, and, if the latter are not complied with by his vendor, he can only enforce a deed by showing or tendering performance, and thereupon seek an adjustment of the equities between the parties, who must all be joined. The rule is stated in *McCreight* v. *Foster*, L. R. 5 Ch. App. 604, 612, as follows: "The duty imposed on those who wish to intervene in such cases is to take their own steps, to file their own bill, and to claim the benefit of the contract in such a way that the court may have the opportunity of dealing with the matter according to the rights of the parties interested in it, and may determine their position accordingly." Bisp. Eq. § 365. So that it may be stated generally that, subject to the conditions suggested, if specific performance will be decreed between the immediate parties to an agreement for the sale of lands, it will also be decreed between the parties claiming under them as purchasers of the legal or equitable title; that is to say, against the grantee of the vendor, and in favor of the subpurchaser, unless other controlling equities are interposed. 2 Story, Eq. Jur. § 789; Tayl. Eq. Jur. § 592; *Hays* v.

*Hall,* 4 Port. (Ala.) 374, 385; *Allison* v. *Shilling,* 27 Tex. 450, (86 Am. Dec. 622.)

The plaintiff had sufficient interest in the subject-matter to entitle him to make his contract with defendant, and if made *bona fide,* and the title was seasonably perfected so as to enable him to comply with the terms of the agreement, the action should not be defeated solely on account of the state of the title when the contract was made. Besides, by the terms of the contract, which was evidently entered into in view of the fact that the deed had not yet been obtained, it was sufficient that "the title should be made good in his name within sixty days."

3. This brings us to the consideration of the last and most material question in the case, and that is whether upon the record it appears that the plaintiff is shown to have acquired a good and marketable title to the land in controversy. Ordinarily a more satisfactory determination of a question of this kind can be had upon the evidence after a full hearing, and we think it would have been the better way in this case. But the parties have rested the question upon the admission of certain facts appearing upon the face of the pleadings, which it is claimed are decisive of the question, and it was accordingly determined by the trial court upon defendants' motion for judgment upon the pleadings. The purchaser is entitled to a marketable title,—one clearly shown to be good. It must therefore be free from reasonable doubt. If it rest entirely upon record evidence, and the muniments of title are preserved and accessible, it will be a question for the court to determine upon their inspection,—a question of legal construction. If it is to be established by proof of matters of fact not of record, the case must be made very clear by the vendor to warrant the court in ordering specific performance. Thus a title depending upon the bar of the statute of limitations may be a marketable title, provided that it clearly appear that the entry of the real owner is barred. *Pratt* v. *Eby,* 67 Pa. St. 396. But where the title depends upon matter of fact, such as is not capable of satisfactory proof, or where the fact is capable of that proof, yet is not so proved, the purchaser cannot be compelled to take it. *Shriver* v. *Shriver,* 86 N. Y. 575, 585. It is not necessary that the title be shown to be bad,

nor is it enough, even, that the court may on the whole consider it good, if there be doubt or uncertainty about it sufficient to form the basis of litigation; for if there be a doubt it cannot be thrown upon the purchaser to contest that doubt. *Rede* v. *Oakes*, 4 De Gex, J. & S. 505. As expressed by the vice-chancellor of New Jersey in *Vreeland* v. *Blauvelt*, 23 N. J. Eq. 483: "A court of equity will not compel a purchaser to take a doubtful title. If there is such an uncertainty about the title as to affect its marketable value, even though a court might consider it good, still the contract may not be specifically enforced. But there must be some debatable grounds on which the doubt can be justified." It is not enough that it be a doubt "beginning in suspicion and ending in suspicion."

We are asked to reverse the decision of the trial court holding the plaintiff's title doubtful and unmarketable. Upon this matter the record discloses the following facts: One John Copley died testate, and seized of the land in controversy, December 16, 1884. By his will he bequeathed and devised all his estate, real and personal, as follows: An undivided one-half of all his property, real and personal, to Michael Copley; an undivided one-fourth of all his property, real and personal, to Mary Donohue; an undivided one-fourth to the lawful children of William Copley, the same to be held by them until they become of lawful age. The will further directs that trustees for the children of William Copley, deceased, be appointed, which, however, has never been done. Michael Copley and Jeremiah Donohue, named as executors, were duly appointed and qualified as such March 12, 1885. The will also contained a provision authorizing the executors to sell real estate of the testator, as follows: "And they may sell or mortgage any of my real estate at any time it may become necessary to do so, to pay any expenses or bequests herein provided for, or for the purpose of saving or improving any other portion of my said property while the same is undistributed." This power was vested in the executors under the will, and the intervention or consent of the probate court was not necessary to its exercise by them. It is not an absolute or unconditional power to sell. It can only be exercised for the purposes expressly named. If the conditions existed calling for the exercise of the power, then undoubtedly the ex-

ecutors might exercise a reasonable discretion as to the mode and circumstances of its exercise, though they would be required to act with good faith and reasonable prudence in the fulfilment of the trust. *Griffen* v. *Ford,* 1 Bosw. 123, 150. But whether or not the conditions named exist under which they may exercise the power must be a question of fact, and not of discretion. No estate in the lands was granted to the executors, in trust or otherwise, but a naked power of sale only. They have no general power to convert real into personal property, and hence, if the necessity for making any sale arose, they would not be authorized to sell property of an amount and value grossly in excess of that necessary to be sold to realize the sum needed. 2 Perry, Trusts, § 784; *Minot* v. *Prescott,* 14 Mass. 496; *Jackson* v. *Anderson,* 4 Wend. 474; *Roseboom* v. *Mosher,* 2 Denio, 61; *Griswold* v. *Perry,* 7 Lans. 98, 103; *Rendlesham* v. *Meux,* 14 Sim. 249, 257.

Counsel for plaintiff concedes that the conditions named must in fact have existed in order to authorize a sale by the executors, but he claims that this appears from the evidence spread upon the record, which the plaintiff alleges to be true, being an extract from the verified report of the executors, filed in the probate court, September 30, 1887, in which it is stated (the items being set forth) that there is a balance to be provided for and required to meet estimated expenses and charges, and for the redemption of land, to the amount of $904.93. Whether this account was ever allowed or approved does not appear. But it seems that long prior to the date of this report, —that is to say, on the 9th day of April, 1887,—the executors had entered into a written contract for the sale of the land in question to Mesick at the price of $6,000, and on the 7th day of October, 1887, Mesick contracted to sell the same land to the plaintiff at the price of $7,600, and on October 11th following the plaintiff entered into the contract in question to sell the premises for $21,800. The contract with Mesick remained wholly executory till December 2, 1887, when, at her request, the executors conveyed directly to the plaintiff, and the plaintiff thereupon executed to them a purchase-money mortgage for $5,000, and to Mesick a mortgage for $500. Under these circumstances, the court was clearly right in holding the title unmarketable. It cannot be said that there is no question or doubt about

the title tendered by the plaintiff, and the marketable value of the land will naturally be affected by the doubt and uncertainty resting upon the title. It certainly is not entirely clear that the executors were warranted in making the executory contract of sale to Mesick when they did, or in executing the deed as they did, or in selling for the price they did, or in selling so large a tract. The devisees, including infant heirs, are not parties, and would not be bound by the judgment of the court in this case. A purchaser might, we think, well hesitate to accept such a title, and a court of equity will not compel its acceptance, and cast upon him the risk of litigation and the embarrassment of a questionable title.

Order affirmed.