# H. SHRAIBERG v. ARNOLD HANSON AND OTHERS.[1]

July 27, 1917,

Nos. 20,358—(98).

**Vendor and purchaser — equitable title of vendee — specific performance — recording act — burden of proof — party to appeal.**

The defendant Stusse on September 13, 1912, sold his farm to the defendant Hanson for $12,000, received part payment, executed a contract of sale, and put him in possession. Hanson on June 4, 1914, sold to the defendant Feldman for $17,000, of which $5,000 was paid by a transfer of merchandise, $7,000 was to be paid by the assumption of payments due Stusse, and $5,000 was to be paid in 1920. He assigned to him his contract with Stusse, executed a contract of sale which provided that the $5,000 due in 1920 should be paid before deed or be secured by mortgage, and put him in possession. Feldman assigned his interest to the plaintiff Shraiberg on June 13, 1914. The contract between Stusse and Hanson and Hanson's assignment to Feldman were recorded on June 9, 1914. The assignment from Feldman to the plaintiff was recorded on June 15, 1914. The contract between Feldman and Hanson was recorded on July 13, 1914. The plaintiff seeks specific performance without paying or securing the $5,000 due in 1920. He claims that he is a bona fide purchaser of an equitable title without notice of the contract relative to securing the $5,000 and that he is protected by the recording act. *Held*:

(1) The vendee in a subsisting contract of sale has an equitable title; and by the transaction recited Hanson acquired the equitable title and Stusse retained the legal title as security.

(2) The assignment of June 4, 1914, conveyed Hanson's equitable title to Feldman. The contract of the same date charged Feldman's title with payment of the $5,000 due in 1920. The assignment of June 13, 1914, conveyed Feldman's title to the plaintiff and was recorded prior to the recording of the contract of June 4, 1914. The recording act embraces equitable titles. The plaintiff, if a bona fide purchaser from Feldman, is protected against the earlier executed but later recorded contract pledging the farm as security for the payment of the $5,000 due in 1920.

(3) The burden of proving that he was a bona fide purchaser within

[1]Reported in 163 N. W. 1032.

the recording act was upon the plaintiff, and the evidence does not sustain a finding that he was.

(4) The defendant Hanson and his wife are the only appellants. Feldman was not served with the notice of appeal, but he filed a brief as respondent and appeared in this court and is bound by the result reached.

Action in the district court for Martin county for specific performance. The facts are stated in the opinion. Among other matters the separate answer of Arnold Hanson alleged that the assignment from Feldman to plaintiff was executed with intent to cheat and defraud said Hanson. The case was tried before Quinn, J., who made findings and ordered judgment in favor of plaintiff. From an order denying their motion to amend the findings of fact and conclusions of law or for a new trial, defendants Arnold Hanson and Lucy Hanson appealed. Reversed.

*Knox & Faber,* for appellants.

*Haycraft & Palmer* and *Albert R. Allen,* for respondent.

DIBELL, C.

This is an action by the plaintiff H. Shraiberg against the defendants John Hanson, M. L. Feldman, Arnold Hanson and Lucy Hanson, his wife, for the specific performance of a contract for the sale of real estate. There were findings for the plaintiff. The defendants Hanson and wife appeal from the order denying their motion for a new trial. The defendants Stusse and Feldman do not appeal. Feldman filed a brief, designating himself respondent, and appeared in opposition to the defendants who appealed.

On September 13, 1912, the defendant Stusse was the owner of a quarter section farm in Martin county. On that day he sold it to the defendant Hanson for $12,000, of which $500 was paid in cash, $4,500 was to be paid on March 1, 1913, and the balance of $7,000 was represented by mortgages either then existing and to be assumed or afterwards to be executed. The usual contract was executed. Hanson and wife entered into a written contract dated June 4, 1914, and delivered June 6, 1914, with the defendant Feldman for the sale of the same property for $17,000, of which $5,000 was then paid by the transfer of merchandise, $7,000 was to be paid as provided in Hanson's contract with Stusse,

and $5,000 was to be paid on January 1, 1920, with 6 per cent annual interest. The contract provided in effect that Feldman, before getting a deed, should pay the $5,000 due in 1920, or secure it by a mortgage on the property. As a part of the transaction Hanson assigned to Feldman his contract with Stusse and delivered to him the original which had not been recorded. Feldman recorded both of these on June 9, 1914, but did not record his contract with Hanson. On June 13, 1914, he assigned his contract with Hanson to the plaintiff Shraiberg. This assignment was recorded on June 15, 1914. The contract between Hanson and Feldman, which apparently was in duplicate, was recorded by Hanson on July 13, 1914. Prior to the commencement of this action Stusse conveyed to Hanson and the latter is able to give title.

On this chain of title Shraiberg, having tendered the amount due on the Stusse contract but not the sum of $5,000 due in 1920 under Feldman's contract with Hanson, and without giving security for it, asks specific performance. A decree to that effect was directed and the contract between Hanson and Feldman was ordered canceled. The result is that Hanson has the personal obligation of Feldman for the $5,000 agreed to be paid in 1920; but it is not secured upon the land as it was provided in the contract that it should be unless paid before deed.

1. The vendee in a subsisting contract of sale gets an equitable title and the vendor retains the legal title as security. By the transaction recited Hanson acquired an equitable title and Stusse retained the legal title as security. Minneapolis & St. L. Ry. Co. v. Wilson, 25 Minn. 382; Smith v. Lytle, 27 Minn. 184, 6 N. W. 625; Randall v. Constans, 33 Minn. 329, 23 N. W. 530; Townshend v. Goodfellow, 40 Minn. 312, 41 N. W. 1056, 3 L.R.A. 739, 12 Am. St. 736; Wilson v. Fairchild, 45 Minn. 203, 47 N. W. 642; Abbott v. Moldestad, 74 Minn. 293, 77 N. W. 227, 73 Am. St. 348; Krelwitz v. McDonald, 135 Minn. 408, 161 N. W. 156. The interest of Hanson was real estate. It would pass by descent. Stearns v. Kennedy, 94 Minn. 439, 103 N. W. 212. It was subject to dower. Wellington v. St. Paul, M. & M. Ry. Co. 123 Minn. 483, 144 N. W. 222; Kasal v. Hlinka, 118 Minn. 37, 136 N. W. 569. It was subject to a homestead right. Wilder v. Haughey, 21 Minn. 101; Hook v. Northwest T. Co. 91 Minn. 482, 98 N. W. 463. It was subject to the lien of a judgment and could be sold on execution. Reynolds v. Fleming,

43 Minn. 513, 45 N. W. 1099; Hook v. Northwest T. Co. 91 Minn. 482, 98 N. W. 463. It could be mortgaged. Randall v. Constans, 33 Minn. 329, 23 N. W. 530; Niggeler v. Maurin, 34 Minn. 118, 24 N. W. 369. It would pass by deed. Wilson v. Fairchild, 45 Minn. 203, 47 N. W. 642; Krelwitz v. McDonald, 135 Minn. 408, 161 N. W. 156. It was such title that the owner of it could maintain an action for permanent damages for trespass. Hueston v. Mississippi & R. R. Boom Co. 76 Minn. 251, 79 N. W. 92.

2. The assignment of June 4, 1914, conveyed the equitable title from Hanson to Feldman. Krelwitz v. McDonald, 135 Minn. 408, 161 N. W. 156. The contract of the same date had like effect as a transfer and in addition it charged the Feldman title with the payment of the $5,000 due in 1920. Feldman's assignment of June 13, 1914, conveyed his equitable title to the plaintiff Shraiberg. Feldman could not maintain specific performance without paying or securing the $5,000 for that was his contract. The plaintiff claims that he bought Feldman's recorded equitable title in good faith, without notice of the unrecorded contract charging it with the payment of the $5,000, and that he is protected by the recording act.

The recording act defines the word "purchaser" as "every person to whom any estate or interest in real estate is conveyed for a valuable consideration, and also every assignee of a mortgage, lease or other conditional estate;" and it defines the word "conveyance" as "every instrument in writing whereby any interest in real estate is created, aliened, mortgaged, or assigned, or by which the title thereto may be affected in law or in equity, except wills, leases for a term not exceeding three years, and powers of attorney." G. S. 1913, § 6813. The provision relative to recording is this: "Every conveyance of real estate shall be recorded in the office of the register of deeds of the county where such real estate is situated; and every such conveyance not so recorded shall be void as against any subsequent purchaser in good faith and for a valuable consideration of the same real estate or any part thereof whose conveyance is first duly recorded * * *." G. S. 1913, § 6844.

The general rule is that equitable titles are embraced within registry laws. Wilder v. Brooks, 10 Minn. 32 (50), 88 Am. Dec. 49; McPheeters v. Ronning, 95 Minn. 164, 103 N. W. 889; 2 Devlin, Deeds, § 628; 2

Jones, Real Property in Conveyancing, § 1374; 2 Tiffany, Real Property, § 476; Webb, Record of Title, § 36. Between the plaintiff and another, both buying from Feldman, the recording act would apply and the conveyance first of record though later in execution would be prior. Krelwitz v. McDonald, 135 Minn. 408, 161 N. W. 156. The question here is whether the plaintiff buying of Feldman was protected against the unrecorded contract pledging the land as security for the $5,000. The assignment and the contract were conveyances within the definition of the statute. If Feldman, instead of evidencing his agreement pledging the land as security for the $5,000 by the contract, had given a purchase money mortgage, or had executed a defeasance, and Hanson had left it unrecorded, it would not be claimed that Shraiberg, if a bona fide purchaser, would not be protected against it. And on principle the situation is hardly different. Hanson gave Feldman a good record title to the equitable estate coming from Stusse and neglected to put of record the contract creating in him a security for the $5,000. Purchasers were not informed of it. The defendants cite Klatt v. Dummert, 70 Minn. 467, 73 N. W. 404, which was followed in Massey v. Lindeni, 98 Minn. 133, 107 N. W. 146. This case holds that the equity in a vendor in an executory contract to a reformation for mutual mistake is available against the vendee's bona fide assignee. In the opinion some general statements are made relative to the rights of an assignee of such a contract. We do not stop to inquire the extent or limits of the right to reformation for mistake when the vendee has transferred to a good faith purchaser nor the character of the rights acquired by a purchaser of a vendee in an executory contract. Here there was no mistake and the rule as to reformation has no direct bearing. The understanding between the parties was perfect and at no time has Stusse claimed an equity or a defense. All the trouble arises through the failure of Hanson to record the contract evidencing his security. The situation was just this: Hanson had a recorded equitable title and conveyed it to Feldman. A contract was made which evidenced security in Hanson for the $5,000 due in 1920. It was not recorded. Feldman conveyed to the plaintiff Shraiberg who bought a recorded equitable title and recorded his conveyance before the contract was put of record. In such a situation we hold that the plaintiff, if a pur-

chaser in good faith, is protected by the recording act against Hanson's claim of security.

3. The court found that the plaintiff purchased in good faith. Whether such finding is sustained by the evidence is for consideration.

The burden of proving that he purchased in good faith was upon the plaintiff. He relied upon the recording act. It gives protection to those who pay value and are without notice or knowledge. Purchasers are charged with such knowledge as an inquiry prompted by the character of the transaction would bring. The plaintiff could not rely solely upon his apparent priority. It was for him to show affirmatively his right to the protection of the statute. Ludowese v. Amidon, 124 Minn. 288, 144 N. W. 965; Errett v. Wheeler, 109 Minn. 157, 123 N. W. 414, 26 L.R.A. (N.S.) 816; Fritz v. Ramspott, 76 Minn. 489, 79 N. W. 520; Mead v. Randall, 68 Minn. 233, 71 N. W. 31; Roussain v. Patten, 46 Minn. 308, 48 N. W. 1122.

On June 6, 1914, the transaction between Feldman and Hanson was closed. On June 9 Feldman recorded the Stusse and Hanson contract, which was delivered to him by Hanson at the time, and the assignment made to him. On June 11 he went to Chicago, the deal with the plaintiff was made on June 12, and he was back in Minnesota on the thirteenth when he executed the assignment to the plaintiff. This he recorded on June 15. The plaintiff is the father-in-law of Feldman and the brother of one M. Shraiberg. The arrangement for the transfer of the Feldman interest is claimed to be something like this: On August 15, 1913, M. Shraiberg sold to Feldman a stock of merchandise, a portion of which was included in the stock transferred to Hanson. To evidence the unpaid purchase price and a loan of $1,000 made at the time Feldman gave Shraiberg five notes of $800 each and one note of $1,000, due yearly in from one to six years. On the back of the notes was an indorsement signed by Feldman to the effect that they were given in part payment of merchandise, and that in the event of his failure to pay them they should evidence an interest of the holder in his business. When the parties met in Chicago the plaintiff, H. Shraiberg, signed these notes and Feldman transferred the land to him. The indorsements on the back of the notes supposed to give M. Shraiberg a lien or some interest in the event of nonpayment were stricken out. It is not clear whether H. Shraiberg

was merely a surety or whether his obligation was primary. He speaks in language indicating that he was surety. Feldman says that he was himself released. Shraiberg never saw the land, was never in Minnesota, and never owned lands in this country. He was 10 years over from the old country and did not understand nor speak, nor read, nor write English. He was engaged in the commission business in Chicago, and owned real property there. He did not personally or otherwise examine the land. The transaction was closed in a very few hours after it was proposed, without the passing of money, with a vague understanding as to what obligation the plaintiff assumed, between men connected by family ties, all of whom had been and were at the time engaged in mercantile pursuits, and none of whom had ever farmed or dealt in farm lands. It is not shown that the plaintiff has paid any part of the notes. Two had matured at the time of the trial. It does not appear that he parted with any money because of his purchase. His testimony is vague as to the collection of rents and as to expenditures. He does not know what he has received or what he has paid. After the purchase he did not look at the farm. His connection with it has been through relatives. His testimony was given by deposition. We cannot believe that he assumed immediate liabilities of $5,000, and others aggregating $7,000, in a few hours after the subject was broached to him, and is unable to give a substantial account of what the real transaction was. It will be noticed that Feldman was transferring property coming to him for $17,000 to the plaintiff for apparently $12,000. Feldman claims that Shraiberg assumed some other obligations. They are undisclosed. H. Shraiberg does not, in giving his account of the transaction, say there were others. Neither does M. Shraiberg. Feldman could not commit a fraud on Hanson by depriving him of security for the $5,000 except through the intervention of a bona fide purchaser. The evidence discloses a not unusual situation where one in an effort to complete a fraud by transferring to an innocent purchaser makes use of a relative whose assumed connection with the transaction is not genuine. We are constrained to hold the evidence insufficient to sustain a finding that the plaintiff was a bona fide purchaser.

4. The defendant Hanson and his wife are the only appellants. Stusse conveyed to Hanson prior to this action. He is not a necessary party. Feldman did not appeal. His answer is not on file. What issues it makes

or are made upon it we do not know. Hanson did not serve the notice of appeal upon Feldman. This should have been done if it was desired to bind Feldman by the adjudication in this court. Atwater v. Russell, 49 Minn. 57, 51 N. W. 629, 52 N. W. 26. However, he filed a brief in which he designated himself as respondent and he appeared in this court. He is bound by the result. Akin v. Lake Superior C. I. M. 103 Minn. 204, 114 N. W. 654, 837. Whether Feldman is a necessary party does not appear; but from what is said it will be understood that when the case goes down for retrial the position of Feldman in it will be as it was at the first one.

Order reversed.

Mr. Justice Quinn, having tried the case below, took no part.