## MINNESOTA BUILDING & LOAN ASSOCIATION v. LEO J. CLOSS AND OTHERS.[1]

February 6, 1931.

No. 27,776.

[1]Reported in 234 N. W. 872.

C. F. *Granrud* and W. U. *Hauser,* for appellants.
*Alice L. Kercher* and *Thomas C. Daggett,* for respondent.

454

DIBELL, J.

Action of unlawful detainer in the municipal court of Minneapolis by the plaintiff building and loan association against the defendants Leo J. Closs and Alfred Bundy. There was judgment for the plaintiff. The defendants appeal.

■ The plaintiff claims the right of possession after a forfeiture pursuant to G. S. 1923, § 9576, as amended, 2 Mason, 1927, id. of a contract in the form of an executory contract of sale to the defendant vendees of a lot in Minneapolis occupied by them as a homestead. Such a contract, as we have held many times, makes the vendees equitable owners in fee and the vendor retains the legal title in fee as security. Each has a conveyable and mortgageable interest. M. & St. L. Ry. Co. v. Wilson, 25 Minn. 382; Krelwitz v. McDonald, 135 Minn. 408, 161 N. W. 156; Wilson v. Fairchild, 45 Minn. 203, 47 N. W. 642; Niggeler v. Maurin, 34 Minn. 118, 24 N. W. 369; Randall v. Constans, 33 Minn. 329, 23 N. W. 530. Each interest has the usual incidents of real property. Mark v. Liverpool & L. & G. Ins. Co. 159 Minn. 315, 198 N. W. 1003, 38 A. L. R. 310; Schraiberg v. Hanson, 138 Minn. 80, 163 N. W. 1032; Stearns v. Kennedy, 94 Minn. 439, 103 N. W. 212; Abbott v. Moldestad, 74 Minn. 293, 77 N. W. 227, 73 A. S. R. 348; Smith v. Lytle, 27 Minn. 184, 6 N. W. 625. The rights of the vendor and vendee are thoroughly understood and additional cases are found in 6 Dunnell, Minn. Dig. (2 ed. & Supp.) §§ 10043a-10045. If the vendee defaults the vendor can terminate the contract upon 30 days' notice, and the rights of the vendee are at an end with no right of redemption. G. S. 1923, § 9576, as amended, 2 Mason, 1927, id; 6 Dunnell, Minn. Dig. (2 ed. & Supp.) § 10091.

■ A pledge of real property in writing as security is a mortgage. Hill v. Edwards, 11 Minn. 5 (22); Fisk v. Stewart, 24 Minn. 97; Steele v. Bond, 28 Minn. 267, 9 N. W. 772; Buse v. Page, 32 Minn. 111, 19 N. W. 736, 20 N. W. 95; Butman v. James, 34 Minn. 547, 27 N. W. 66; Marshall v. Thompson, 39 Minn. 137, 39 N. W. 309; Marston v. Williams, 45 Minn. 116, 47 N. W. 644, 22 A. S. R. 719; Tenvoorde v. Tenvoorde, 128 Minn. 126, 150 N. W. 396; Jentzen

v. Pruter, 148 Minn. 8, 180 N. W. 1004; Citizens Bank v. Meyer, 149 Minn. 94, 182 N. W. 913; Lundeen v. Nyborg, 161 Minn. 391, 201 N. W. 623; Sanderson v. Engel, 182 Minn. 256, 234 N. W. 450. Additional cases are collected in 4 Dunnell, Minn. Dig. (2 ed. & Supp.) § 6156, et seq. A contract in the form of an executory contract of sale if made to secure a loan is a mortgage. If a mortgage, the vendee's title can be extinguished only by foreclosure and the lapse of the redemption period. This is the whole meaning of the phrase "once a mortgage always a mortgage." After the mortgage is made the mortgagor may convey his equity of redemption to his mortgagee. The court will scrutinize such conveyance to see that it is not part of a disguised mortgage. 4 Dunnell, Minn. Dig. (2 ed. & Supp.) § 6396. .

■ The facts upon which the controversy in this case arises are these: On December 4, 1919, one Nichols was the owner of a lot in Minneapolis subject to a mortgage of $1,500. On that day he sold and agreed to convey the lot to the defendants for $4,500. They paid $500 in cash, assumed the $1,500 mortgage and agreed to pay the balance of $2,500 at the rate of $30 per month beginning January 10, 1920, and continuing until paid with interest. The transaction was an executory contract of sale. The defendants took possession and occupied the property as a home. They became equitable owners in fee, and Nichols retained the legal title in fee as security. It was such a transaction as is mentioned in paragraph 1, and upon default Nichols could make a strict foreclosure on 30 days' notice and the defendants would have no right of redemption.

The defendants found it difficult to make their payments and decided to refinance. On November 3, 1926, they made application to the plaintiff for a loan of $4,000 secured by 40 shares of its capital stock, they becoming shareholders to that amount, and a bond and first mortgage upon the property so as to pay off the first mortgage and encumbrances which had accrued and expenses of the refinancing. It was worked out in this way. The plaintiff purchased the legal fee which Nichols held as security. It paid the first mort-

gage. It paid accrued taxes and interest.. It paid attorney's and appraisal fees, the mortgage registration tax, insurance, and other expenses incident upon the closing of the new loan. The balance of the $4,000 it paid to the defendants in money. On November 12, 1926, it gave the defendants a contract for a deed whereby it was to convey the lot to them for $4,000. The defendants agreed to pay this sum with interest in monthly instalments according to the terms of the bond.

The defendants defaulted, and the contract was in form canceled on 30 days' notice in conformity with the provisions of G. S. 1923, § 9576, as amended, 2 Mason, 1927, id. If the cancelation was effective, the plaintiff at the end of 30 days had the right to recover possession by unlawful detainer. G. S. 1923 (2 Mason, 1927) § 9149. If the transaction was a mortgage, it did not have such right, unless the statute presently to be discussed gave it a right as a building and loan association superior to that of the ordinary mortgage lender.

On April 27, 1928, after the 30 days had expired on the 1926 loan, the defendants again made application for a loan of $4,000 secured by 40 shares of the stock of the plaintiff and by a bond and contract upon the land. The purpose was to refinance. On the same date the plaintiff contracted to convey the land to the defendants by special warranty deed for $4,000 payable at the rate of $44 per month. On June 3, 1929, the defendants were in default, and had been in default for several months, and on June 5, 1929, the plaintiff caused the 30 days' notice of cancelation to be served upon them. They did nothing to comply with the contract, and since then they have done nothing. If the cancelation was effective, the plaintiff at the end of 30 days had the right to recover possession by unlawful detainer just as in the case of the 1926 loan. If the transaction was a mortgage, it did not have such right unless the statute which we have mentioned and is later to be discussed gives a building and loan association a right superior to that of the ordinary mortgage lender.

In both the 1926 and 1928 transactions the defendants applied for loans. The 1926 application recited, "said loan to be secured by

40 shares of stock in the Minnesota Building & Loan Association, and bond and first-mortgage"; and the title was stated to be in the name of John F. Nichols. The 1928 application was the same except it stated that the loan was to be secured by 40 shares of stock and "bond and first-contract," the word "mortgage" in the printed form being stricken and the word "contract" substituted. The plaintiff cannot claim successfully that these transactions did not make mortgages—perhaps it does not. If mortgages, they are still mortgages, except as the second superseded the first; and the defendants are entitled to retain possession, unless because of the favor given building and loan associations—a claim made by the plaintiff and hereafter considered. The property was pledged for the payment of a debt, it was given the form of an executory contract of sale, the transaction was the giving of security, it was found by the court as a fact to be a mortgage, and it was a mortgage; so there could not be a forfeiture at the expiration of the 30 days' notice of cancelation.

In determining whether the plaintiff, because it is a building and loan association, has a superior right to another lender, we consider the organization and character of building and loan associations and the effect and purpose of the amendments of 1919 and 1925, the latter amendment being substantially a codification of the building and loan association statutes.

In 1 Dunnell, Minn. Dig. (2 ed.) § 1163, the nature of a building and loan association as defined by our statutes and construed by our decisions, prior to the amendments of 1919 and 1925, is stated as follows:

"A building and loan association is defined by statute to be a corporation, under public control, authorized solely to accumulate funds to be loaned to members to assist in acquiring homes. The general design of such an association is the accumulation, from fixed periodical contributions of its shareholders or members, and from the profits derived from the investment of the same, of a fund, to be applied from time to time in accommodating such shareholders with loans, to enable them to acquire and improve real

estate by building thereon; the conditions of the loans being such that the liability incurred therefor may be gradually extinguished by means of the borrower's periodical contributions upon his stock, so that when the latter shall be fully paid up the amount paid shall be sufficient to cancel the indebtedness. Members who do not become borrowers secure the incidental benefit of a profitable investment of their contributions to the capital stock in the loans made to borrowing members. Such associations have been characterized as 'creatures of statute,' and 'creatures of the state.' Mutuality is one of the basic ideas of such an association."

The revision commission of 1905, in classifying financial corporations, defined a building and loan association, R. L. 1905, § 2967, as follows:

"A building and loan association is a corporation under like [public] control, authorized solely to accumulate funds to be loaned to members to assist them in acquiring homes."

The definition has not been changed. G. S. 1923 (2 Mason, 1927) § 7635. In the revision the laws governing building and loan associations are found in R. L. 1905, §§ 3048-3067. There was no amendment until L. 1919, p. 350, c. 329. The amendment of 1919 amended G. S. 1913, § 6434, which has since become G. S. 1923, § 7757, "so as to read as follows," and added a portion commencing with "also in transactions," appearing in the latter part of the present statute quoted below. By L. 1925, p. 291, c. 260, § 11, G. S. 1923, § 7757, was amended so as to "read as follows," and is now 2 Mason, 1927, § 7757.

"No such association shall engage in the business of buying and selling or dealing in real estate, but it may secure obligations due to it and the payment of its loans by taking real estate mortgages. It may purchase at any sheriff's judicial, or other sale, public or private, any real estate upon which it has a mortgage, judgment, or other lien, or in which it has any interest. It may acquire title to any real estate on which it holds any lien, in full or part satisfaction thereof, and may sell, convey, hold, lease, or mortgage the

same. Also in transactions involving the purchase by a stockholder of improved real estate for home purposes, or for the construction of a home, it may when authorized by its by-laws acquire the title thereof, it may give to such stockholder a contract to convey the same as upon a sale thereof."

There is a break before the words "it may give," perhaps resulting from an omission in 1925 of a part of what was added by 1919; but if we should supply it we would have an uncertain meaning still. The 1926 and 1928 contracts were loan contracts and were secured by bonds. G. S. 1923, § 7750, as amended, 2 Mason, 1927, id. requires a non-negotiable note or bond. The plaintiff was financing or refinancing the defendants. Money lenders, especially when the equity is not large and the payments are in periodic instalments, where the loss may be great in the event of default, because of delay, are restive under the provision of the law requiring foreclosure and giving a year's period of redemption after sale. The reference in the plaintiff's brief to the hardship of requiring a foreclosure and permitting a year for redemption suggests that what it was sought to get from the legislature was an elimination of a foreclosure, except as a 30 days' notice may be such, and the abolition of a redemption except as the period of 30 days after the giving of the notice is such. Responding to their appeals the legislature made the amendments. They did not give a right of strict foreclosure. Whether under the amendments or without them the plaintiff could sell land on executory sale contracts we need not consider. It had a mortgage, not an executory contract of sale. It would take but a few words to give the right clearly.

■ Whether the legislature should favor building and loan associations by giving them a 30 days' foreclosure in a limited class of loans or otherwise is a question of policy which once announced by the lawmakers leaves nothing for the courts but obedience. Such legislation is not unconstitutional as class legislation for the suggested reason that others, individuals and banks and investment companies, making similar loans upon an instalment or amortization plan, are denied the privilege. Building and loan associations

so classify themselves by the character of their activities as to permit of different legislation. The laws relative to usurious contracts do not apply to them. Rates of interest otherwise usurious may be enjoyed by them. G. S. 1923 (2 Mason, 1927) §§ 7041, 7754. And so, illustrating the principle, in Zenith B. & L. Assn. v. Heimbach, 77 Minn. 97, 104, 79 N. W. 609, 611, the court said:

"The operations of building and loan associations proper, when they adhere to the basic principles of their organization, differ so radically from ordinary loan transactions as to afford a proper basis for classification, and to justify the legislature in making a separate class of them; hence a statutory exemption of them from the operation of the usury laws is constitutional. This proposition is sustained on principle and the great weight of authority, and we hold the statutes here in question constitutional."

The legislature did not choose to give the plaintiff the right to loan in the form of an executory contract and foreclose as under § 9576. Whether they should is a question of policy for and against which arguments may be made. A little plain language would bring the result. Section 7757 does not bring that result nor affect a situation such as is presented to us by the record.

Judgment reversed.

OLSEN and LORING, JJ. took no part.