266 N.J. Super. 74 (1993)
628 A.2d 793
BARRIE B. ELLISON, INDIVIDUALLY AND AS EXECUTOR OF THE ESTATE OF CARL B. ELLISON; LOUIS FRIEDMAN AND CHERYL A. FRIEDMAN, T/A FRIEDELL ASSOCIATES, A NEW JERSEY PARTNERSHIP, PLAINTIFFS-APPELLANTS-CROSS-RESPONDENTS,
v.
THE EVERGREEN CEMETERY, A CEMETERY ASSOCIATION INCORPORATED UNDER THE LAWS OF THE STATE OF NEW JERSEY, DEFENDANT-RESPONDENT-CROSS-APPELLANT, AND BARBARA W. DOWNS,[[1]] INDIVIDUALLY AND AS EXECUTRIX OF THE ESTATE OF HARRY P. DOWNS, JR.; AND WARNOCK AUTOMOTIVE GROUP, INC., A NEW JERSEY CORPORATION, DEFENDANTS-RESPONDENTS. THE EVERGREEN CEMETERY, A CEMETERY ASSOCIATION INCORPORATED UNDER THE LAWS OF THE STATE OF NEW JERSEY, PLAINTIFF,
v.
CARL B. ELLISON, BARRIE ELLISON, LOUIS FRIEDMAN, DAVID FRIEDMAN, AND HEADQUARTERS DATSUN, INC., DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued May 24, 1993.
Decided July 9, 1993.
*76 Before Judges PETRELLA, D'ANNUNZIO and KEEFE.
Herbert Stern argued the cause for appellants-cross-respondents Barrie B. Ellison, Louis Friedman and Cheryl A. Friedman, t/a Friedell Associates (Stern & Greenberg, attorneys; Howard D. Cohen and Joel M. Silverstein, on the brief).
John Buonocore, Jr. argued the cause for respondent-cross-appellant The Evergreen Cemetery (McKirdy and Riskin, attorneys; Mr. Buonocore, on the brief).
Myles C. Morrison, III and Steven F. Ritardi for respondent Barbara Y. Downs (Dillon, Bitar & Luther, attorneys; relied on the brief submitted by The Evergreen Cemetery).
Robert L. Tchak for respondent Warnock Automotive Group, Inc. (Wolff & Samson, attorneys; relied on the brief submitted by The Evergreen Cemetery).
No other parties participated in this appeal.
The opinion of the court was delivered by PETRELLA, P.J.A.D.
*77 Summary judgment was granted in the Law Division in favor of defendant The Evergreen Cemetery (Evergreen), resulting in the dismissal of plaintiffs' complaint. Plaintiffs had sought certain declaratory and equitable relief regarding the validity of 1964, 1965 and 1968 leases of cemetery land along Ridgedale Avenue in Morristown from Evergreen to their predecessor in interest. The motion judge assumed for purposes of the summary judgment motion that Evergreen lacked capacity to enter into certain ground leases between 1964 and 1968 under the then extant Rural Cemetery Act, N.J.S.A. 8:1-1 et seq., but nonetheless refused to fashion a remedy because the alleged statutory incapacity (since removed by the 1971 adoption of Title 8A) on the part of Evergreen was essentially irrelevant to the plaintiffs' problems with their subleases.
As indicated, plaintiffs sued to invalidate certain ground leases its predecessor in interest entered into with Evergreen on August 7, 1964, November 1, 1965, and May 1, 1968, for portions of land owned by the cemetery along Ridgedale Avenue and to obtain the opportunity to renegotiate the rental terms. Those leases, which terminate in the year 2009, contain provisions which allow for decennial redetermination of the annual rental amount. Subleases of the property from plaintiffs' predecessor in interest to various entities do not provide for increases in rental value under the same formula. It developed that, at least from and after 1989, plaintiffs may be disadvantaged in their lease arrangements with the subtenants.
On appeal plaintiffs argue that the uncontradicted "fact" was that Evergreen lacked any authority to enter into the ground leases and that this, as well as the defenses asserted by Evergreen, allegedly raised fact issues as to the state of mind of the lessees, and therefore requires reversal of the June 12, 1992 order for summary judgment. Plaintiffs also challenge the September 11, 1992 order of the trial court awarding litigation costs and *78 counsel fees (amounting to approximately $25,000) against them under the "Frivolous Litigation Statute," N.J.S.A. 2A:15-59.1.
In its cross-appeal, Evergreen asks us to decide the validity of the three leases which were entered into in 1964, 1965 and 1968 between Evergreen and Carl B. Ellison, plaintiffs' predecessor in interest. It asserts there are at least five other leases that might be questioned based on the motion judge's assumption that the cemetery violated the Rural Cemetery Act. We might well question the propriety of a request in this court for such a declaratory ruling where there is no case and controversy yet, and those other lessees are not parties to the litigation. There may also be a question of the standing of Evergreen to cross-appeal since the judgment on appeal was entirely in its favor as to the three leases involved here. Generally, only a party aggrieved by a judgment may appeal from it. See Howard Savings Institution v. Peep, 34 N.J. 494, 499, 170 A.2d 39 (1961); see also Vassallo v. Bell, 221 N.J. Super. 347, 355, 534 A.2d 724 (App.Div. 1987); Tassie v. Tassie, 140 N.J. Super. 517, 524-525, 357 A.2d 10 (App.Div. 1976). Moreover, appeals are taken from judgments, not from oral opinions or reasons. Glasser v. Downes, 126 N.J. Super. 10, 15, 312 A.2d 654 (App.Div. 1973), certif. denied, 64 N.J. 513, 317 A.2d 726 (1974). Our usual rule is that an order or judgment will be affirmed on appeal if it is correct, even though the judge gave the wrong reasons for it. Isko v. Planning Board of Tp. of Livingston, 51 N.J. 162, 175, 238 A.2d 457 (1968).
We need not burden this opinion with an extensive review of the three leases, their provisions and the history of the arbitrations.[2] We do note the plaintiffs' argument with respect to the fact that the same law firm represented both Evergreen, as the original lessor, and the original lessees at the inception of the ground *79 leases in 1964 and for some time thereafter. Contemporary standards of practice recognize that dual representation is fraught with dangers and is generally disapproved.[3] The record does not disclose the details of what transpired at that time, but that issue does not affect our determination with respect to the judgment entered in this case.

I.
At the time of the three Evergreen-Ellison leases, the Revised Statutes provided in N.J.S.A. 8:2-47 (L. 1878, c. 137, § 1) (upon which plaintiffs rely):
A cemetery association incorporated under sections 8:1-1 to 8:1-5 of this title or under any special act may sell and dispose of such part of its lands as have not been laid out into burial plots or lots, and use the proceeds of such sales to pay its debts and liabilities and to improve its cemetery. [Ibid. (emphasis added).][[4]]
The word "dispose" does not necessarily mean sell. See Black's Law Dictionary 423 (5th ed. 1979). As subsequent statutes use the words rents or leases, it is therefore at least a debatable question whether the term "dispose" as used in the above-quoted statute means something different than "sell." For example, L. 1881, c. 133, § 1 (N.J.S.A. 8:2-29), provided:

*80 The rents, issues, profits, income and revenues derived from any and all lands lying within the bounds of any cemetery or burial ground belonging to, or used by or held in trust for any incorporated cemetery association, may be taken and sequestered under and by virtue of the orders and decrees of the court of chancery, according to the rules and practice of such court, and applied by such court to the payment of any judgment recovered in any of the courts of this state against the cemetery association owning or using such lands; and the court of chancery may appoint a receiver of such rents, issues, profits, income and revenues, and make such order regarding the same as may be just and equitable.
This section shall not be construed to make such lands liable to seizure, taking or sale by virtue of any judgment, decree, order, execution or other process made, rendered by or issued out of any court in this state. [Emphasis added.]
Although plaintiffs argue that Evergreen lacked statutory authority to lease (as opposed to sell) land in 1964, 1965 and 1968 under the plain language of N.J.S.A. 8:2-47 (L. 1878, c. 137, § 1), another section of former Title 8 dealt with the sale or other disposition of cemetery property. For instance, L. 1920, c. 189, § 1 (N.J.S.A. 8:2-42), stated:
Any cemetery association, organized either under a general or special law, having acquired or acquiring lands for burial purposes, may, before any burial shall have been made therein and before any part thereof has been actually sold for burial purposes, through its managers or trustees, sell and convey such lands, or any part thereof, either at public or private sale, on such terms as the managers and trustees may deem to be to the best interest of the association; ....
In addition, L. 1922, c. 107, § 1 (N.J.S.A. 8:2-44), provided:
Any cemetery association mentioned in § 8:2-42 of this title, having acquired or acquiring, either by grant or devise, any interest in lands, either in fee or in trust, which lands or interest therein are not, in the judgment of its managers or trustees, suitable for burial purposes, may, before any burials have been made therein, or before any part thereof has been sold for burial purposes, sell and convey such lands, or any part thereof or interest therein, in the same manner and with the same effect as lands may be sold under the provisions of §§ 8:2-42 and 8:2-43 of this title.
L. 1929, c. 163, § 1 (N.J.S.A. 8:2-48), authorized sales and conveyances in the following language:
Any cemetery company, cemetery association or corporation owning lands acquired for cemetery purposes, a part of which are vacant, bordering on a public street or highway, and not used for cemetery purposes, may sell and convey the same and execute and deliver appropriate conveyances therefor. [Emphasis supplied.]
This 1929 statute, which would appear to apply to Evergreen and the leases involved here, uses the terms "sell and convey" and *81 "conveyances." The terms "convey" and "conveyances" historically have included various forms of transferring title or interests in land, not just absolute conveyances in fee simple. See, e.g., Feldman v. Urban Commercial, Inc., 64 N.J. Super. 364, 373, 165 A.2d 854 (Ch.Div. 1960); Roger A. Cunningham, William B. Stoebuck, Dale A. Whitman, The Law of Property § 6.10 (1984).
Black's Law Dictionary 402 (4th ed. 1957), contains the following definitions:
CONVEY. To pass or transmit the title to property from one to another; to transfer property or the title to property by deed or instrument under seal. Used popularly in sense of "assign," "sale," or "transfer." Crookshanks v. Ransbarger, 80 W.Va 21, 92 S.E. 78, 82; McQuiddy Printing Co. v. Hirsig, 23 Tenn. App. 434, 134 S.W.2d 197, 205.
Convey relates properly to the disposition of real property, not to personal. Dickerman v. Abrahams, 21 Barb., N.Y. 551, 561. To convey real estate is, by an appropriate instrument, to transfer the legal title to it from the present owner to another. Abendroth v. Greenwich, 29 Conn. 356.
CONVEYANCE. In pleading. Introduction or inducement.
In real property law. In the strict legal sense, a transfer of legal title to land. In the popular sense, and as generally used by lawyers, it denotes any transfer of title, legal or equitable. Chupco v. Chapman, 76 Okl. 201, 170 P. 259, 266. The transfer of the title of land from one person or class of persons to another. Klein v. McNamara, 54 Miss. 105; Alexander v. State, 28 Tex. App. 186, 12 S.W. 595; In re Loes' Will, 55 N.Y.S.2d 723, 726. An instrument in writing under seal, (anciently termed an "assurance,") by which some estate or interest in lands is transferred from one person to another; such as a deed, mortgage, etc. 2 Bl.Comm. 293, 295, 309.
Conveyance includes every instrument in writing by which any estate or interest in real estate is created, aliened, mortgaged, or assigned, or by which the title to any real estate may be affected in law or equity, except last wills and testaments, leases for a term not exceeding three years, and executory contracts for the sale or purchase of lands. Stearns Lighting & Power Co. v. Central Trust Co., C.C.A.Mich. 223 F. 962, 966; Shralberg v. Hanson, 138 Minn. 80, 163 N.W. 1032, 1033. [Emphasis Added.]
Thus, by 1964 the question of whether cemeteries could lease lands in long-term leases remained debatable at very least. There was now a reference to "rents" in the 1881 statute, "sell and convey" in other statutes, and deliver appropriate "conveyances," as in the 1929 statute quoted above. The term "conveyances" has been considered broad enough to include transfer of titles by *82 various documents, including leases, but other than short-term leases.
The Fifth Edition of Black's Law Dictionary (5th ed. 1979), which came out after the leases in issue, is substantially to the same effect and defines "convey" and "conveyances" as follows:
Convey. To transfer or deliver to another. To pass or transmit the title to property from one to another. To transfer property or the title to property by deed, bill of sale, or instrument under seal. Used popularly in sense of "assign", "sale", or "transfer". See Conveyance.
Conveyance ... In its most common usage, transfer of title to land from one person, or class of persons, to another by deed. Term may also include assignment, lease, mortgage or encumbrance of land. An instrument by which some estate or interest in lands is transferred from one person to another; such as a deed, mortgage, etc.... [Id. at 301 (emphasis added).]
See also Black's Law Dictionary 333 (6th ed. 1990) (virtually identical to 5th edition).
With the passage of the New Jersey Cemetery Act, N.J.S.A. 8A:1-1 et seq., effective December 1, 1971, and the repeal of the former Title 8 by N.J.S.A. 8A:12-2 (L. 1971, c. 333), a new provision relevant to the sale and lease of cemetery lands was promulgated:
A cemetery company may exchange its lands for other lands provided no body has been interred therein. A cemetery company may lease for a term of years such parts of its lands as have not been laid out into burial plots or lots and use the proceeds of such lease to pay its debts and liabilities and to improve its cemetery. Any lease entered into pursuant to this section shall be acknowledged or proved in the office of the county recording officer and the lands and property subject of such lease shall not be entitled to the tax and other exemptions set forth in 8A:5-10.[[5]] A cemetery company shall not lease any of its lands directly or indirectly to any person or entity in any business in which a cemetery company is specifically prohibited from engaging in accordance with the terms of 8A:5-3 of this act. [N.J.S.A. 8A:6-2 (emphasis added).]
We need not decide, as plaintiffs urge, whether L. 1878, c. 137, § 1 (N.J.S.A. 8:2-47), in effect when the leases were signed, made a lease of unused cemetery land void as an ultra vires act. Aside from the fact that even the plaintiffs do not seek a declaration of *83 an absolute voiding of their leases ab initio, but rather an opportunity to reform them, it is only necessary to consider, as did the trial judge, whether that remedy is now available to plaintiffs. In this regard in a somewhat different context our former Court of Errors and Appeals felt free to look beneath the surface of the case to determine whether public or private interests were being advanced in a challenge to vacation of cemetery lands in the heart of Newark. See Mayor of City of Newark v. Stockton, 44 N.J. Eq. 179, 180, 14 A. 630 (E. & A. 1888). For present purposes, we need merely assume, without deciding, that the trial court was only presented with an issue of the cemetery's statutory authority to enter into the 1964, 1965 and 1968 leases under N.J.S.A. 8:2-47. There is, however, no express prohibition in any of the relevant statutes of leases as to property which had not yet been laid out into burial plots or used exclusively for the burial of the dead. In the absence of an express prohibition, and taking into account the use of language in the pre-1960 statutes quoted above that makes the question of a cemetery's power to lease reasonably debatable, the 1971 revision of Title 8A is significant.
The 1971 adoption of the Title 8A revision of the cemetery laws expressly permitted such leases to be made. See N.J.S.A. 8A:6-2, as amended. Depending upon how one views the prior statutes, it can be said that this revision either made new law or simply served to clarify the arcane language of the prior law that made doubtful the practice of leasing cemetery land.
In any event, at very least this statutory amendment permitted ratification of any previous ultra vires act. For some nineteen years[6] the parties, through their conduct, may be deemed to have ratified their ongoing lease relationship. Even though plaintiffs claim that they were unaware until December 1991 of the asserted lack of authority they attribute to Evergreen to lease, they should have known that which was readily knowable from available statutory law. Hence, plaintiffs are estopped to challenge the *84 validity of the lease based on the 1878 statute. Indeed, they did not raise the issue on at least two prior occasions involving litigation of these leases after adoption of the 1971 revision and the 1973 amendments to the cemetery statute. Merely because plaintiffs obtained a new attorney in December 1991 who projected a new theory to attempt to renegotiate the rental provisions of the leases is of no consequence to the estoppel bar.
Moreover, as the Law Division judge suggested, it is doubtful that at this late stage either side could successfully set aside the leases on the basis of an ultra vires act or an illegal bargain. Indeed, as Professor Corbin noted:
The general statement is often made that a bargain that is illegal and void by reason of a statute existing at the time of making is not validated and made enforceable by the subsequent repeal of the statute. Such a rule as this is actually applied, and properly so, if the statute prohibited the making of such a bargain for reasons of public policy as conceived by the Legislature....

The contrary result obtains, however, if it is expressly so provided in the repealing statute, or if the court finds an implication to that effect, as it is likely to do when the policy underlying the original statute or the extent of its prohibition is doubtful. A bargain may be declared illegal and enforcing remedies denied, without prohibiting or making unlawful any of the performances that are promised. [6A Corbin on Contracts § 1532, at 802-803 (1962) (emphasis added).]
Similarly, Professor Williston has stated:
In general, bargains voidable or unenforceable because made under a prohibitory statute (where the bargain is not regarded as involving serious wrong) or under an inoperative statute, or because there was no statute authorizing such bargain, are deemed validated by repeal of such prohibitory statute or by subsequent statutes enacted expressly to cure the defect, provided that the legislature could have authorized or permitted the making of such contract in the first instance. [15 Williston on Contracts § 1758, at 188-189 (3d ed. 1972).]
Although Grossman v. Calonia Land & Improvement Co., 103 N.J.L. 98, 134 A. 740 (E. & A. 1926), refused to apply similar reasoning with respect to a contract that was void at its inception under the provisions of a usury statute which had subsequently been repealed, we attribute this result to this State's strong public policy against usury. See In re Greenberg, 21 N.J. 213, 219, 121 A.2d 520 (1956). We cannot find the same public policy extant concerning the leasing of unused and unneeded cemetery properties. Here, not only is the policy underlying the earlier statutes *85 doubtful, as the motion judge concluded, but the extent of any prohibition is as well. No public policy would be served by interfering with those lease agreements whose fairness has not been seriously challenged. As we view it, the problem exists only because of the terms of the subleases. There is no overreaching apparent in the ground leases themselves. Plaintiffs have not suffered any harm as a direct result of any violation of the cemetery act, and have for many years benefitted by the lease provisions.
Under a ratification theory, equitable defenses such as estoppel and laches would apply. In light of our determination, we need not consider the applicability of the entire controversy doctrine, R. 4:30A. Nor need we address the issues raised in Evergreen's cross-appeal which we dismiss.

II.
Although we agree with the motion judge's ruling with respect to the summary judgment entered in favor of Evergreen, we disagree with his ruling imposing roughly $25,000 in counsel fees against plaintiffs under the "Frivolous Litigation Statute," N.J.S.A. 2A:15-59.1.
In approaching the issue of deterring baseless litigation, while not discouraging honest and creative advocacy, the focus is upon the objective reasonableness of the action of a party under the circumstances. Iannone v. McHale, 245 N.J. Super. 17, 29, 583 A.2d 770 (App.Div. 1990). The determination of whether the suit is frivolous must be "based on the record already made in the matter, thus precluding routine collateral evidential forays into states of mind and non-record facts and circumstances." Ibid. In Khoudary v. Salem County Bd. Social Servs., 260 N.J. Super. 79, 88, 615 A.2d 281 (App.Div. 1992), we held that the issue was to be decided under the preponderance of the evidence standard. Here, the judge concluded that the suit was not commenced in bad faith solely for the purpose of harassment, delay or malicious injury as *86 contemplated by N.J.S.A. 2A:15-59.1(b)(1). We have no reason to disturb that finding.
Plaintiffs' action in bringing this litigation cannot clearly be characterized as conscious wrongdoing or evidence of a dishonest purpose. See Borzillo v. Borzillo, 259 N.J. Super. 286, 292, 612 A.2d 958 (Ch.Div. 1992). Instead, it appears that plaintiffs were attempting to preserve their right to challenge the then impending arbitration award by questioning the validity of the lease agreement. See Battle v. General Cellulose Co., 23 N.J. 538, 543-544, 129 A.2d 865 (1957). Thus, although it was proper to consider the fact that the thrust of the litigation was to negate or delay arbitration, this does not necessarily rise to the level of bad faith. See generally Duerlein v. New Jersey Full Ins. Underwriting Ass'n, 261 N.J. Super. 634, 619 A.2d 664 (App.Div. 1993). This case differs from Somerset Trust Co. v. Sternberg, 238 N.J. Super. 279, 284-287, 569 A.2d 849 (Ch.Div. 1989), where the parties conceded that they had no basis in law whatsoever for their answer in a foreclosure action. Here, plaintiffs realized that their financial situation was apparently going to get worse under the ground lease rental re-determination when compared to the rents received under the subleases, and sought to alleviate that burden. That does not strike us as bad faith within the meaning of the frivolous litigation statute.
The motion judge's determination under N.J.S.A. 2A:15-59.1(b)(2) seems to be that there was no basis in law or equity for this action because he would not fashion a remedy with possibly drastic consequences for a large commercial strip of land in Morristown when the Legislature determined definitively in the 1970s, if it had not done so before, the social policy with respect to rental of cemetery property. However, we cannot agree that under N.J.S.A. 2A:15-59.1(b)(2) there was no "reasonable basis in law or equity" to support the litigation. The most that can be said is that plaintiffs were perhaps overly optimistic in seeking a remedy, but this does not mean that the litigation was essentially frivolous.
*87 Accordingly, we reverse the award of counsel fees assessed against plaintiffs in favor of defendant.
The judgment with respect to the viability of the lease is affirmed. The judgment awarding counsel fees is reversed. The cross-appeal is dismissed. No costs to any party.
NOTES
[1] Apparently, her middle initial is "Y."
[2] On August 18, 1992 the arbitrators set the fair rental value for the ten-year period beginning January 1, 1989 at $182,880 per year, with 7% interest on arrears since that date. The consolidated case brought by Evergreen relative to its demand to enforce arbitration and appoint a third arbitrator is not involved in this appeal.
[3] As to the current "bright line" rule against dual representation in complex commercial transactions, see Baldasarre v. Butler, 132 N.J. 278, 625 A.2d 458 (1993).

The lawyers involved in this appeal did not represent any of the parties at the time the property was leased.
[4] Effective June 21, 1968, N.J.S.A. 8:2-47 was amended by L. 1968, c. 74, § 1 to refer specifically to leases in situations involving the impact of a state highway (apparently not involved here).

In addition to this provision, sales and conveyances of land acquired for (but not presently used for) burial purposes, N.J.S.A. 8:2-42 (L. 1920, c. 189, § 1), sales and conveyances of land unsuitable for burial purposes, N.J.S.A. 8:2-44 (L. 1922, c. 107, §§ 1-2), and sales and conveyances of vacant land bordering on a public street or highway, N.J.S.A. 8:2-48 (L. 1929, c. 163, § 1), were also permitted. None of these citations were brought to the attention of this court by any of the parties. We remind counsel of their obligation to bring all relevant authority to the attention of the court, whether or not it supports their position. See R.P.C. 3.3(a)(3).
[5] This mention of 8A:5-10 was substituted in 1973 for the former reference to 8A:5-5. See L. 1973, c. 219, § 23.
[6] From 1971 to the filing of the complaint in 1991.