WILLIAM P. ABBOTT and Others v. OLE O. MOLDESTAD and Another.

November 25, 1898.

Nos. 11,357—(33).

**Vendor and Purchaser—Enforcement by Vendor of Specific Performance—Sale of Equitable Interest.**

Where parties make a mutual executory contract for the sale of real estate, and the vendor covenants on his part to convey the land, and in consideration thereof the vendee promises to pay the purchase price, and there is nothing in the contract which makes it invalid or objectionable in its nature, nor in the circumstances connected with it, equity regards the vendee as the beneficial owner of the premises, even though he has not paid the purchase price; and the vendor has a right to enforce payment of the purchase money by a suit in equity against the vendee's equitable estate in the land, instead of by an ordinary action at law to recover the debt. And the vendor may proceed to enforce specific performance by such suit, whereby the vendee's equitable estate under the contract is sold in pursuance of a judicial decree which

will operate as an assignment of the vendee's rights under the contract, and whereby it would not operate as a cancellation of the contract itself.

**Same—Specific Performance—When Discretion of Court is Limited.**

While courts may, in the exercise of a sound discretion, grant or withhold a decree for specific performance of an executory real-estate contract, this discretion is not an arbitrary or capricious one, but judicial; and if the contract has been entered into by a competent party, and is not objectionable in its nature and circumstances, specific performance is as much a matter of course, and therefore of right, as are damages. The discretion of the court exists only so far as it must necessarily judge whether, under all the circumstances, the contract is or is not an equitable one. When that fact is determined, judicial discretion ceases. *Held*, that under the rules of law here enunciated, and all of the facts and circumstances in this case, it was error for the trial court to refuse specific performance of the contract.

Action in the district court for Redwood county by the executors of the estate of Henry G. Abbott, deceased, for the specific performance of an executory contract for the sale of land and to enforce a vendor's lien. Defendants set up that the contract was rescinded by mutual consent of the parties thereto and prayed for the cancellation of the contract and purchase-money notes given in pursuance thereof. The other material facts are stated in the opinion. The cause was tried before Webber, J., who ordered the cancellation both of the contract and of the notes. From a judgment entered in accordance therewith, plaintiffs appealed. Reversed.

*Baldwin & Patterson* and *Palmer & Beck*, for appellants.

The vendor in an executory contract for the sale of land has an implied vendor's lien for the unpaid portion of the purchase price and he may have specific performance thereof enforced in equity. Chemedlin v. Prince, 15 Minn. 263 (331); Duke v. Balme, 16 Minn. 270 (306); Smith v. Lytle, 27 Minn. 184; Pomeroy, Cont. § 6; Andrews v. Sullivan, 7 Ill. 327; Burger v. Potter, 32 Ill. 66; Brown v. Haff, 5 Paige, 234; Wade v. Greenwood, 2 Rob. (Va.) 474; Brace v. Doble, 3 S. D. 110; Moore v. Moxey (Ky.) 39 S. W. 420; Tompkins v. Cooper, 97 Ga. 631; Kloke v. Gardels, 52 Neb. 117; Hendrix v. Barker, 49 Neb. 369; Gaston v. White, 46 Mo. 486; Dellinger v.

Foltz, 93 Va. 729; First v. Pearson, 119 N. C. 294; Davis v. Mc-Gaughey (Tex. Civ. App.) 32 S. W. 447; Mullens v. Big Creek (Tenn.) 35 S. W. 439; Walker v. Casgrain, 101 Mich. 604; Raymond v. San Gabriel V. L. & W. Co., 53 Fed. 883; Fisher v. Shropshire, 147 U. S. 133; Gates v. Parmly, 93 Wis. 294; Conley v. Finn, 171 Mass. 70; Freeson v. Bissell, 63 N. Y. 168; Thomson v. Smith, 63 N. Y. 301; 22 Am. & Eng. Enc. 942, 947; 28 Id. 193; Denton v. Scully, 26 Minn. 325; Short v. Van Dyke, 50 Minn. 286; Pawlak v. Granowski, 54 Minn. 130; Walter v. Hanson, 33 Minn. 474; Fairchild v. Marshall, 42 Minn. 14.

Although granting or withholding a decree for a specific performance of an executory real-estate contract is in the sound discretion of the court, yet where the contract is valid, unobjectionable in its nature and in the circumstances connected with it, capable of being enforced, and where it is just and proper that it should be fulfilled, it is as much a matter of course for a court of equity to decree a specific performance of the contract as for a court of law to give damages for a breach of it. See Waterman, Sp. Per. § 6; Fry, Sp. Per. (3d Am. Ed.) § 25; Peters v. Delaplaine, 49 N. Y. 362; Beach v. Dyer, 93 Ill. 295; Godwin v. Collins, 4 Houst. (Del.) 28; King v. Hamilton, 4 Pet. 310; Lee v. Kirby, 104 Mass. 420; Wedgwood v. Adams, 6 Beav. 600.

*A. C. Dolliff*, for respondents.

Courts award any relief to which plaintiff's pleadings and proof entitle him, regardless of the prayer embodied in his complaint. Ross v. Purse, 17 Colo. 24; Bennett v. Abrams, 41 Barb. 619. Much must be left to the sound discretion of the judge who hears the case, and where his determination is reasonably supported by the evidence and is consistent with the established principles which govern the equitable remedy, it will not ordinarily be disturbed by the appellate court. Austin v. Wacks, 30 Minn. 335.

He who asks specific performance should show the facts which make such decree equitable, and the failure to do this justifies a refusal of the decree. Fowler v. Marshall, 29 Kan. 665. The vendor's equitable remedy, in an unfulfilled contract for the sale of land, consists in a suit in the nature of a strict foreclosure, by

which the vendee is decreed to pay the price within a limited time, and in default of such payment the contract is cancelled, the vendee's equitable estate is foreclosed and the vendor's legal title again becomes absolute. 3 Pomeroy, Eq. Jur. (2d Ed.) § 1261, note. The position of a vendor under an executory contract for the sale of land is similar to the obligor's under a bond for conveyance, it being an agreement to convey when the obligee performs certain conditions. See Dahl v. Pross, 6 Minn. 38 (89); Yoss v. De Freudenrich, 6 Minn. 45 (95); Drew v. Smith, 7 Minn. 231 (301); Wallrich v. Hall, 19 Minn. 329 (383); Hunt v. Thwing, 51 Minn. 491; Nelson v. Hanson, 45 Minn. 543.

The relief asked for in the present case has never been granted in this state. Where time is not the essence of the contract, or where strict performance of the contract has been waived, this court has repeatedly granted the remedy of requiring the vendee to pay the balance due and in default, decreeing a forfeiture and cancellation of the contract. Mo v. Bettner, 68 Minn. 179; O'Connor v. Hughes, 35 Minn. 446.

BUCK, J.

On September 15, 1891, the plaintiffs' testator, Henry G. Abbott, as party of the first part, entered into an executory contract with the defendant Ole O. Moldestad, as party of the second part, substantially as follows:

(1) Abbott, in consideration of the covenants and agreements of Moldestad, sold and agreed to convey by warranty deed to the latter the N. ½ of the S. W. ¼ of section 4 in township 113, of range 36 W., containing 80 acres of land.

(2) Moldestad, as consideration for the conveyance of said premises, agreed to pay Abbott the sum of $880, as follows: $80 down; $100 November 1, 1892; $200 November 1, 1893; $200 November 1, 1894; $300 November 1, 1895,—with interest at 8 per cent. per annum, payable November 1, 1892, and annually thereafter, according to the conditions of four promissory notes, and to pay all taxes or assessments that thereafter might be levied or assessed upon said premises.

(3) Time was made the essence of the contract, and if Moldestad

made default in any of the payments of interest or taxes, or any of the covenants in the contract, the same was to be void, at the election of Abbott; but, until such default, Moldestad was to have possession of the premises. The covenants in the contract were to run with the land, and mutually bind the heirs, executors, administrators and assigns of the respective parties.

During the years 1892, 1893, 1894 and 1895, taxes were levied on said land, which, with interest on the same, amounted to $59.55, which Moldestad failed to pay, and plaintiffs were compelled to pay the same. The defendants paid the $80 down, took possession of the land, cropped it during the years 1893, 1894, 1895 and part of it in 1896, but never made any further payments of the purchase price.

The real value of the land does not appear, but there is no claim that there was any fraud, deceit or mistake in regard to its value or condition, and this question need not be considered.

The vendor, Abbott, died at the city of Utica, in the state of New York, on January 17, 1896,—about three months after the last instalment was due on the contract.

Moldestad finally abandoned the land, without any apparent cause, and especially without any act on the part of the vendor causing him to do so. Nor did the vendor or his representatives ever take possession of the land after the said executory sale, and they have at all times been ready, able and willing to execute to him a good and sufficient warranty deed, according to the terms of said contract, and thereby to convey to him a good title to said land, free from incumbrance.

The relief sought by the plaintiffs is that an early day be fixed by the court for the payment of the whole amount due under the contract,—the amount to be ascertained by the court as provided by the terms of the contract,—and that the amount so ascertained be decreed to be a lien on said premises, and that the land be sold to pay the same, with expenses of sale and costs and disbursements of the action, and that plaintiffs have judgment for the deficiency, if any, against the defendant Ole O. Moldestad, and that he and his wife, and all persons claiming under, by or through them, or either

of them, be barred and foreclosed of all right, claim, title or interest in and to said land.

The defendants interposed an answer, but the trial court found the allegations therein to be untrue. However, the defendants asked that the contract be adjudged null and void, and rescinded; that they have judgment for no cause of action on the part of plaintiffs against them; that the purchase-money notes be surrendered to them and cancelled, or, in default of their being so delivered and cancelled, that they recover the sum of $800 and interest, with costs and disbursements.

The trial court decided the cause in favor of the defendants, and refused to make any decree enforcing specific performance, and ordered that judgment be entered annulling the contract; that defendants had no right, title, claim or interest in the land; and that they were entitled to have the said purchase-money notes cancelled.

In this holding, we think the trial court erred. In cases of a contract for sale of real estate before conveyance, the vendor has the legal title, which he holds as security for the performance of the vendee's obligation, and as. trustee for the vendee, subject to such performance; and that title may be conveyed or devised, and will descend to his heirs. 3 Pomeroy, Eq. Jur. (2d Ed.) § 1261.

In equity the vendee is regarded as the beneficial owner of the premises, even though he has not paid the purchase price; but where the contract is mutual, as in this case, he can compel the vendor to convey, upon payment of the purchase price. But by mere neglect or refusal to pay, he cannot defeat the vendor's right to enforce payment of the purchase money by a suit in equity against the vendee's equitable estate in the land, instead of by an ordinary action at law to recover the debt. The vendor may proceed to enforce specific performance by an action wherein the vendee's equitable estate under the contract is sold in pursuance of a judicial decree, which will operate as an assignment of the vendee's rights under the contract, and would not operate as a cancellation of the contract itself. 3 Pomeroy, Eq. Jur. (2d Ed.) § 1261.

By reference to the terms of the contract, which we have already stated, it will appear that the agreement is one to which these

rules may be applied. The vendor promised to do a certain act upon his part, viz., convey the land; and, in consideration thereof, the vendee promised to pay the purchase price of the land. Pomeroy, in his work on Contracts ("Specific Performance," c. 1, § 6), says:

"It might be supposed, from the general principles heretofore stated, that only the party who is to receive the benefit of the acts or omissions promised by the other could resort to equity, and enforce their specific performance according to the terms of the undertaking, while the party who is to receive the benefit of the money payment would be left to his legal remedy,—the recovery of the money judgment in a common-law action. This supposition, however logical it may appear, is prevented by a well-established doctrine of equity, that the right to a specific performance, if it exists at all, is, and necessarily must be, mutual; in other words, it is and must be held and be capable of being enjoyed alike by both parties in every agreement to which the jurisdiction extends. As a familiar example, in the simplest form of contract for the sale of land, when the vendor agrees to convey, and the purchaser merely promises to pay a certain sum as the price, since the latter may, by a suit at equity, compel the execution and delivery of the deed, the former may also, by a similar suit, enforce the undertaking of the vendee, although the substantial part of his relief is the recovery of money."

It is contended by the defendants' counsel that the granting or withholding a decree for a specific performance of an executory real-estate contract is in the sound discretion of the court. This observation is frequently made, and many authorities are frequently cited to sustain it, but the meaning of this proposition is not that the court may arbitrarily or capriciously compel specific performance of one contract, and refuse to compel performance of another, but

"That the court has regard to the conduct of the plaintiff, and to circumstances outside the contract itself, and that the mere fact of the existence of a valid contract is not conclusive in the plaintiff's favor. 'If the defendant,' said Plumer, V. C., 'can show any circumstances dehors, independent of the writing, making it inequitable to interpose for the purpose of a specific performance, a court of equity, having satisfactory information upon that subject, will not interpose.' But of these circumstances the court judges by settled and fixed rules; hence the discretion is said to be not arbitrary or capricious, but judicial; hence, also, if the contract has

been entered into by a competent party, and is unobjectionable in its nature and circumstances, specific performance is as much a matter of course, and therefore of right, as are damages. The mere hardship of the results will not affect the discretion of the court." Fry, Sp. Per. § 25.

To the same effect is Waterman, Sp. Per. Cont. § 6.

In the case of Thompson v. Winter, 42 Minn. 121, Gilfillan, C. J., at page 122, said:

"The matter of compelling specific performance is one of sound and reasonable discretion,—of judicial, not arbitrary and capricious, discretion. There must be some reason, founded in equity and good conscience, for refusing the relief. Such reason has been generally found, by the court refusing it, in some mistake or fraud or unconscionableness in the contract, or in some laches on the part of the plaintiff changing the circumstances so as to make it inequitable to compel a conveyance, or where the claim is stale, or there is reason to believe it was abandoned. But, whatever the reason may be, it must have some reference to, some connection with, the contract itself, or the duties of the parties in relation to it. We have never found a case where the court refused the relief as a means of enforcing some independent claim of the defendant against the plaintiff, or because the defendant had some independent claim which he might not be able to enforce against the plaintiff. If such could be regarded as an equitable reason for denying relief, every action of the kind might involve the investigation of all unclosed transactions between the parties, whether relating to the contract or subject-matter of the action, or entirely distinct from it.

In this case there is no reason to suppose the contract other than a fair one. The plaintiff has been prompt in performing on his part, and in seeking his remedy. The defendant has a claim against plaintiff, entirely independent of the contract to convey, which claim, by the terms of the agreement under which it arose, was not to become due for more than three years after the time when he was to convey. The possibility that when it becomes due he may not be able to enforce it, by reason that plaintiff's insolvency may continue, does not make it inequitabe to enforce this contract already matured. That a purchaser may have an adequate remedy by action for damages, although a reason for not holding what he has done to be part performance to take the case out of the operation of the statute of frauds, is of itself no reason for withholding the proper remedy, where the contract is valid under the statute."

We are of the opinion that, in the entire absence of any fact which renders it inequitable to enforce specific performance, the

right thereto does not rest wholly in the judicial discretion of the trial court. If the facts are fairly in controversy, which would render its enforcement inequitable, or rank injustice so appears on the face of the contract, or by evidence independent of it, as to make enforcement of the contract inequitable, the court need not interpose its equitable powers to enforce it.

"The relief demanded in an action for the specific performance of a contract lies in the discretion of the court, only so far as it must necessarily judge whether, under the circumstances, the agreement is or is not an inequitable one. When that fact is determined, judicial discretion ceases." Fry, Sp. Per. (3d American Ed.) 11, note 1, and authorities cited.

There is nothing in this contract which makes it invalid or objectionable in its nature, or in the circumstances connected with it. It is not claimed that there was any misrepresentation, fraud or mistake. The parties stood upon an equality, and there is no claim of overreaching or advantage taken by either party.

Moldestad had the use of the whole 80 acres for three years, and part of it for another year, and there is no claim that the crop was at any time a failure, or even partially so; and his mere insolvency, if such is the fact, would not of itself justify the court in refusing specific performance of a contract so fair on its face. The contract was a mutual one; that is, each party had a mutuality of remedy. There is not the slightest evidence in this case to shock the conscience, or show that it would produce a hardship to enforce specific performance. Merely because a party testifies that he is unable to pay for the land which he has bargained for by a written contract does not constitute a defense against its enforcement, especially in the absence of fraud, ambiguity or mistake.

As against the $80 paid down on the purchase price of the land, the defendants have had many years' use of it, without paying any taxes, and the equities seem to be rather with the plaintiffs than the defendants.

Nothing appearing that the plaintiffs should be deprived of their equitable remedy, it is the duty of Moldestad to fulfil all of its stipulations on his own part, as the plaintiffs stand ready to do all that the vendor agreed to do on his part.

The judgment of the trial court is reversed, and it is directed to enter judgment on the findings of fact in favor of plaintiffs for the relief demanded in the complaint.