## IVO C. KENNEDY AND ANOTHER v. G. F. HASSE.

114 N. W. (2d) 82.

March 16, 1962—No. 38,252.

*Herman & Karon,* for appellant.
*H. E. Cochrane,* for respondents.

FRANK T. GALLAGHER, JUSTICE.

Appeal from an order of the district court denying defendant's motion for amended findings of fact and conclusions of law or in the alternative for a new trial.

This is an action for specific performance of a contract for the sale of land. Plaintiffs, the owners of a hardware store and business in Jordan, Minnesota, sued the defendant to enforce an agreement dated June 11, 1959, in which he contracted to buy their real estate, inventory, and equipment for a total price of $39,527.94. Defendant paid $2,000 as a downpayment; $14,500 was to be paid by the transfer of a lot owned by defendant in Hennepin County; $9,402.23, by assumption of the unpaid balance of a contract for deed between plaintiffs and one Marguerite Krautkremer; $9,942.50, by assumption of the unpaid balance of a chattel mortgage dated June 4, 1957, between plaintiffs and Mrs. Krautkremer; and $3,683.21, by payments of $200 per month with interest on the balance at 6 percent until paid in full, with the further provision that defendant was to give "a factors lien or chattel mortgage" as security for the unpaid balance of the $3,683.21.

Briefly, it appears that defendant became interested in the hardware store sometime in February 1959 after seeing an advertisement listing the store for sale. Two previous purchase agreements executed by the parties were superseded by the agreement involved herein. That agreement provided, among other things:

"* * * Parties of the first part [plaintiffs] will obtain an agree-

ment from Marguirite Krautkremer to the effect that particular items on the Chattel Mortgage owned by her, will be released upon payment of actual value or replacement of an item of equal value and that any new purchases by party of the second part [defendant] shall not be included as a part of that Chattel Mortgage."

It is undisputed that plaintiffs failed to obtain the agreement from Mrs. Krautkremer.

The contract between the parties was completed after extensive negotiations and after defendant had spent considerable time investigating plaintiffs' business. The defendant took possession of the store in June 1959,[1] but according to plaintiffs, failed to comply with the terms of the agreement except to make the downpayment. In any event, plaintiffs commenced this action on August 31, 1959, and the defendant vacated the premises on the following day.

The complaint alleged that plaintiffs had duly performed or tendered performance of all of the conditions of the agreement except obtaining a release of items included in the chattel mortgage owned by Mrs. Krautkremer, which plaintiffs claimed was waived by defendant.

In his answer defendant denied that plaintiffs had performed all of the terms and conditions of the agreement and that he had waived any part of the contract. The answer admitted that defendant obtained possession on June 10, 1959, but specifically denied that he was still in possession of the premises and operating the hardware store and that all sales franchises had been transferred to him.

The answer also alleged that shortly prior to the execution of the agreement, plaintiffs represented to defendant that the business set forth in the agreement produced in 1958 a gross profit of $17,266.15, and a net profit of $10,278.12, and that that representation was made for the purpose of inducing the defendant to enter into the contract; that the defendant believed the same to be true, and relying thereon, entered into the agreement; that in truth and in fact the said business produced an income in 1958 which was considerably and materially less; that upon discovering the falsity of said representation, defendant

---

[1]There was some dispute as to whether defendant took possession June 10 or on June 16 or 17, 1959.

immediately repudiated and rescinded said contract and vacated the premises and so informed the plaintiffs; that plaintiffs refused to rescind the agreement; and that the defendant requested cancellation of the contract but plaintiffs failed and refused to cancel it.

The answer further alleged that at the time of the execution of the agreement it was understood and was the intention of the parties that plaintiffs would obtain an extension of the chattel mortgage; that the extension would be for a period of 2 years so that the defendant would have approximately 4 years from the date of the execution of the agreement in which to pay the mortgage; that by mutual mistake of the parties the same was not included in the agreement; that by the terms of that portion of the agreement plaintiffs were to obtain the extension of the mortgage from Mrs. Krautkremer and that they wholly failed to perform said condition.

The case was tried without a jury. The court found that during the month of February 1959 the defendant began negotiating the purchase of the business and building of plaintiffs; that subsequently the defendant had frequent contact with plaintiffs, the store employees, and customers and personally informed himself of all facts surrounding the operation of plaintiffs' business; that defendant entered into the purchase agreement involved herein, which agreement superseded all prior agreements between the parties; that under that agreement defendant assisted in taking an inventory, took possession of the store, and commenced operating the business on June 10, 1959; that he then opened a bank account, operated the business as Jordan Our Own Hardware, ordered merchandise, and paid the employees in the usual manner until September 1, 1959, at which time he tendered the key to plaintiffs, which they refused to accept; that the defendant was advised on June 12, 1959, by witness Robert J. Breunig of the inability of the plaintiffs to obtain the release provided for in the agreement; and that defendant, by his own testimony, made some effort to sell the hardware building after having knowledge of plaintiffs' inability to obtain the release.

The court also found that plaintiffs had performed or tendered performance of all the provisions of the purchase agreement on their part to be performed, except the provision for obtaining the release; that

defendant, by his conduct in continuing to exercise ownership after he knew of plaintiffs' inability to perform the agreement, waived his right to rescind or cancel the agreement.

The trial court further found that the defendant had personally informed himself of all facts surrounding the business for a considerable period of time prior to entering into the agreement and that no fraud was perpetrated upon him nor did any exist in the case.

The court granted specific performance of the purchase agreement and concluded that plaintiffs were entitled to the $2,000 downpayment and directed the real estate agent who was holding it to deliver it to the plaintiffs. In ordering defendant to perform all of the provisions of the agreement, the court ordered defendant to execute and tender to plaintiffs a factors lien or chattel mortgage with a promissory note to secure the unpaid balance in the amount of $3,683.21.

On appeal the defendant raises certain questions and assigns as error certain findings of the trial court. The legal questions raised on appeal are briefly these: Did the trial court err (1) in finding that defendant unconditionally waived the release-clause provision of the written purchase agreement; (2) in granting specific performance under the written purchase agreement, several material terms of which he claims are indefinite and uncertain; and (3) in finding that no fraud existed in the case.

■ Defendant argues that the trial court erred in finding that he unconditionally waived the release-clause provision of the agreement. He claims that the facts do not indicate a clear intention on his part to waive the provision, citing 20 Dunnell, Dig. (3 ed.) § 10135d, to the effect that an intention to waive rights should clearly be made to appear from the facts disclosed. He further argues that in the instant case a waiver of the performance of the release provision in the contract was found despite what he claims is the uncontradicted evidence that months after the alleged waiver the parties continued negotiations relative to the performance of the release clause and that the real estate agent and the plaintiffs attempted to perform the provisions of the release clause.

Defendant also contends that his testimony reveals that when plaintiffs first notified him of the failure to obtain the performance of the

release clause, they suggested a new performance in the form of a new mortgage wherein the terms of the release provision would be obtained.

Defendant claims that there was no waiver because the condition precedent thereto was not performed. He argues that the written contract provided, among other things, that the terms for the sale of the real estate and personal property should include the obligation of the defendant to assume and pay a chattel mortgage dated June 4, 1957, between Marguerite Krautkremer as mortgagee and the plaintiffs as mortgagors. Moreover, that there was a release clause above referred to relating to the assumption of that chattel mortgage; that plaintiffs' attorney admitted that plaintiffs were unable to effectuate the required release clause; and that that created a breach of contract by the plaintiffs. He contends that reasonable minds could not differ on the fact that the alleged waiver by him was conditioned on obtaining a new mortgage between plaintiffs and defendant which would contain the release provision and would extend for 4 years from the date of the execution thereof in lieu of assuming the other mortgage.

In connection with the waiver, plaintiffs argue that it appears from Mr. Kennedy's testimony, as well as that of Mr. Breunig, that within 2 days after the agreement was signed defendant knew that Mrs. Krautkremer would not agree to the provision as to the release of the chattel mortgage. They further contend that even if defendant's testimony be accepted, he knew at least within 3 weeks after signing the agreement that the release could not be obtained, but, notwithstanding this, he offered the building for sale, continued to operate the business, continued to order and pay for merchandise, and continued to pay the employees. In addition, there is considerable testimony that defendant stated a number of times after he learned of the failure to obtain the release that it did not matter to him whether it was obtained or not.

Upon a review this court must consider the evidence in the light most favorable to the findings of the trial court. Poksyla v. Sundholm, 259 Minn. 125, 106 N. W. (2d) 202. In doing so it will serve no useful purpose to attempt to set out in detail the testimony offered by both parties.

It is our opinion that there was evidence from which the trial court

could reasonably find that defendant waived his right to rescind or cancel the agreement by his conduct in continuing to exercise ownership of the business and building, to order merchandise, to pay employees, and to operate the business after he knew of plaintiffs' inability to fully perform the agreement.

■ Defendant argues that an action for specific performance does not lie on a purchase agreement for real property where the material terms are uncertain and indefinite. He contends that there are several indefinite terms in the agreement here which render it incapable of specific performance as a matter of law.

He claims there was no agreement as to what type of conveyance was to be utilized to convey the equipment which was subject to a chattel mortgage or the inventory; that there was no agreement on the question of which party was to pay the personal property taxes on the inventory or the property taxes for 1958 due in 1959; and that the purchase contract purports to include certain shop equipment, store equipment, and fixtures, but whether a particular item is inventory or equipment is not made clear.

He further contends that the contract provides that the plaintiffs are selling all personal property of the business, but notwithstanding that provision, plaintiffs assert ownership over certain accounts receivable, which the trial court acknowledged. He claims that the contract is not certain and complete and free from doubt or ambiguity. Plaintiffs on the other hand argue that the contract is reasonably clear, definite, and certain and is a proper contract for specific performance.

The vendor in a contract for the sale of land has a right to specific performance of the contract. Abbott v. Moldestad, 74 Minn. 293, 77 N. W. 227, 73 A. S. R. 348; O. W. Kerr Co. v. Nygren, 114 Minn. 268, 130 N. W. 1112. Mutuality requires that the vendor have the same right as has the vendee to compel performance. McClintock, Equity, p. 151; Restatement, Contracts, § 360, *comment c.*

Before specific performance can be granted to either party, the contract must be certain and complete. It is not the function of courts to make contracts for litigants; "[t]he most they can do is to enforce those already made." Dial Toaster Corp. v. Waters-Genter Co. 181 Minn. 606, 609, 233 N. W. 870, 871.

Defendant contends that the agreement to give "a factors lien or chattel mortgage" to secure payment of $3,683.21 is so uncertain that the contract cannot be specifically enforced. He points out that the contract is silent as to the nature of the property to be covered by the factors lien or mortgage, and cites the following cases as controlling: George v. Conhaim, 38 Minn. 338, 37 N. W. 791; Rahm v. Cummings, 131 Minn. 141, 155 N. W. 201; Leslie v. Mathwig, 131 Minn. 159, 154 N. W. 951; Holliday v. Hubbard, 45 Minn. 333, 47 N. W. 1134.

In all of these cases the ambiguities were far more substantial than in the present case. In George v. Conhaim, *supra,* and Holliday v. Hubbard, *supra,* the contracts merely provided that the vendee was to deliver "securities" for the payment of the purchase price. In Rahm v. Cummings, *supra,* the contract did not state the time of payment of the mortgage debt, this apparently being left to future negotiations. In Leslie v. Mathwig, *supra,* the contract stated that payment was "to be arranged by adjustment of mortgages," and the court refused specific performance.

In the present case, the ambiguity relates to a provision concerning less than 10 percent of the purchase price. The provision clearly states what the interest is and what the duration of the mortgage shall be. As to the remaining terms of the proposed security, the intention of the parties can be clearly deduced that defendant was to have his choice between a factors lien and a chattel mortgage and that the security was to cover the property sold. It was noted in George v. Conhaim, *supra,* that if the contract there had provided for a "mortgage," the court might have been justified in assuming that this meant a mortgage on the land sold; so here, it is only reasonable to assume that the parties intended a mortgage on the merchandise and equipment sold.

We have examined the other matters as to which defendant claims the contract is not clear. It is not necessary that every possible question be answered in advance by the parties before a contract can be enforced; it is only necessary that the intent of the parties as to fundamental terms be ascertainable with reasonable certainty. 5 Williston, Contracts (Rev. ed.) § 1424; 5 Corbin, Contracts, § 1174; Fry, Specific Performance (6 ed.) § 368. In our opinion the present con-

tract is not so vague as to be fatal to plaintiffs' right to specific enforcement.

Defendant argues that there was an element of fraud preventing the utilization of the equitable doctrine of specific performance. He argues that according to his testimony he saw a copy of the listing agreement indicating that the profit from the store was $1,500 per month and that it was with that information that he entered into negotiations to purchase the hardware store.

He refers to a summary of business operations supplied to him by plaintiffs which indicated profits in 1958 of $10,278.12 and claims that he was told by the plaintiffs that the books of account would show the information found in the summary; also that he relied upon the monthly income reported in the summary and made an offer to purchase the hardware store conditioned upon these figures.

Plaintiffs maintain that there is no showing by the defendant that these figures were in any way inaccurate or untrue and that the evidence is undisputed that if the cash sales for the year are added to accounts receivable the gross sales in fact exceeded those set forth in the summary.

The court found that the defendant personally informed himself of all facts in connection with plaintiffs' hardware business for a considerable time prior to entering into the agreement and that no fraud was perpetrated upon the defendant, nor did any fraud exist.

It appears from the record that for several months prior to the time the parties entered the agreement defendant had visited plaintiffs' store, had observed the surroundings, and interviewed various customers, and under the circumstances the court was justified in finding that no fraud was perpetrated upon defendant by plaintiffs.

Affirmed.

MR. JUSTICE ROGOSHESKE, not having been a member of the court at the time of the argument and submission, took no part in the consideration or decision of this case.