In re Lawrence A. KREGER, Debtor.

**Thousand Acres Development, LLC, Plaintiff,**

v.

**Lawrence A. Kreger, Robin Kreger, and Michael J. Iannacone, in his capacity as Administrator of the Plan of Reorganization, Defendants.**

Bankruptcy No. 00–33987.
Adversary No. 03–3088.

United States Bankruptcy Court, D. Minnesota.

Aug. 4, 2003.

Clinton E. Cutler, Fredrikson & Byron, PA, Minneapolis, MN, for Debtor.

Kenneth Corey Edstrom, Minneapolis, MN, for plaintiff.

Sarah J. Wencil, U.S. Trustee Office, Minneapolis, MN, trustee.

Michael J. Iannacone, Lake Elmo, MN, trustee.

## ORDER GRANTING SUMMARY JUDGMENT

DENNIS D. O'BRIEN, Bankruptcy Judge.

This matter was heard on the 4th day of June, 2003, on motion by Plaintiff Thousand Acres Development, LLC, for summary judgment requiring the Defendants Lawrence A. Kreger, Robin Kreger, and Michael J. Iannacone, in his capacity as Administrator of the Plan of Reorganization, or the appropriate Defendant, to convey certain real estate to the Plaintiff in specific performance of an alleged enforceable purchase agreement. Appearances were as noted in the record at the hearing. Based on arguments of counsel, briefs, and upon all the relevant files and records, the Court now being fully advised in the matter makes this **ORDER** pursuant to the Federal and Local Rules of Bankruptcy Procedure.

### I.

Lawrence Kreger filed a voluntary Chapter 11 proceeding in the Bankruptcy Court for the District of Minnesota on September 29, 2000. At the time of commencement of the bankruptcy case, he owned certain real property in Sherburne County, Minnesota (the "Property") consisting of twenty-three acres of farmland located next to his homestead. Robin Kreger was not a title owner of the Property, and her only interest in the Property arose by virtue of her marriage to Lawrence.

On April 5, 2001, the Court appointed Michael J. Iannacone as Trustee in the Kreger bankruptcy. On May 10, 2001, the Kregers executed a purchase agreement (the "Purchase Agreement") to convey the Property to Thousand Acres for a price of $200,000.00, receiving a $2,000 earnest money check. Thousand Acres is a real estate developer, and intended to subdivide the Property after its acquisition for sale as single family lots. The Purchase Agreement included several contingencies. Specifically, a Vacant Land Addendum attached to the Purchase Agreement provided:

SPECIAL CONTINGENCIES: This Purchase Agreement is subject to the following contingencies and if the following contingencies checked below cannot be satisfied or waived, in writing, by Buyer by June 29, 2001, this Purchase Agreement shall become null and void and all earnest money shall be refunded to the Buyer. Buyers and Sellers agree to sign a cancellation of the Purchase Agreement . . .

a. Buyer shall provide a certificate of survey of the property, at Buyer expense, not later than June 29, 2001.

b. Buyer obtaining approval of city township of proposed subdivision development plans at Buyer expense.

Thousand Acres did not satisfy these contingencies before June 29, 2001, nor had the Plaintiff executed a written waiver of the contingencies.

In the meantime, after the Kregers signed the Purchase Agreement, the Debtor presented the Agreement to the Trust-

ee, delivered the earnest money to him, and asked the Trustee to take over the Agreement. He requested that the Trustee obtain approval of the Bankruptcy Court to authorize the sale in accordance with the Agreement.

On September 13, 2001, November 26, 2002, and January 18, 2003, pursuant to the Trustee's motions, the Court entered orders allowing the Trustee to sell the Property to Thousand Acres for the amount provided in the Purchase Agreement. The Agreement itself was attached to the initial motion brought in September. The November and January motions were made by the Trustee for amending orders to facilitate fulfillment by Thousand Acres of the contingencies related above.

On February 6, 2003, the Court entered an Order confirming the Debtor's Third Modified Plan of Reorganization (the "Plan"). Pursuant to Article VIII of the Plan, the Trustee was to sell non-exempt real property to implement the Plan. The Property was specifically identified as among the property to be sold, but the Purchase Agreement was not mentioned in the Plan. A closing was ultimately set by the parties for February 26, 2003.

However, on February 26, 2003, the Trustee determined that sufficient funds were available to implement the Plan without the sale of the Property, and he informed Thousand Acres that he would not be proceeding with the sale. The effective date of the Plan was February 25, 2003, and the Trustee took the position that the Property had reverted to the Debtor and he no longer had authority to sell it. He informed Thousand Acres by letter, February 26, 2003:

> This is to confirm my telephone message to you that my authority as trustee and, therefore, my authority to sell real estate has terminated. On February 6, 2003 the United States Bankruptcy Court confirmed a Plan of Reorganization which was effective Tuesday, February 25, 2003. I am enclosing for your information a copy of the Plan which was approved by the United States Bankruptcy Court. The Plan provides that the Plan Administrator may only sell property necessary to satisfy the debts of Mr. Kreger.[1] With the funds on hand together with the amount of the loan which Mr. Kreger has obtained. I have sufficient funds without the necessity of selling property described as parcel 33.

> If you believe you have a claim, you should file it with the United States Bankruptcy Court immediately.

Thereafter, Thousand Acres commenced this adversary proceeding.

## II.

This is a dispute between the Debtor and Thousand Acres, and is driven by a dramatic increase in the value of the Property since the Purchase Agreement was entered. Estimated value presently is $460,000.00. The Plaintiff seeks specific performance of the Purchase Agreement, claiming that the Trustee assumed the Agreement and is legally obligated to perform. The Debtor claims: 1) there never was an enforceable Purchase Agreement because the Debtor had no authority to enter the Agreement on May 10, 2001, since Mr. Iannacone was Court appointed Trustee; 2) the Trustee never assumed the Agreement and the Plan did not require sale of the Property; 3) even if there might otherwise have been an enforceable Agreement, it became null and void by its own terms upon failure of Thousand Acres to fulfill the contingencies by June 29,

---

1. The Plan was a 100 percent payment plan.

2001; and, 4) issues of material fact exist that render summary judgment inappropriate. For the reasons discussed below, the Court finds that the Trustee ratified the Agreement and adopted it as his own, the Agreement remains legally enforceable, there exist no material issues of fact, and Thousand Acres is entitled to specific performance.

*Purchase Agreement As The Trustee's Agreement.*

■ The Debtor had no authority to sell the Property when he entered the Purchase Agreement with Thousand Acres, but the Trustee did have the authority, and by his actions he embraced the Agreement, sought approval from the Court, obtained the approval, and thereafter at all times acted regarding the Property pursuant to the Agreement. In his motion for authority to sell in September 2001, the Trustee represented:

> **Trustee has received an offer to purchase approximately 23 acres owned by Debtor from Thousand Oaks Development, LLC. A portion of the property to be sold is described on Exhibit A attached hereto and incorporated herein.** The real estate is also listed on the Debtor's Schedule A as Parcel 33 and is a portion of the 20.06 parcel plus the 3 five acre parcels listed. The purchase price is $200,000.00 for a conveyance free and clear of liens and encumbrances. To the best of Trustee's knowledge, information and belief, the property is encumbered by a first mortgage in favor of Farm Credit Services and a tax liens [sic] in favor of the Internal Revenue Service and Minnesota Department of Revenue and a judgment lien in favor of Steams County Bank. The trustee is uncertain as to the status of delinquent real estate taxes for years

2000 and earlier. **Trustee believes it is in the best interest of the Debtor's estate to accept the offer from Thousand Oaks Development LLC to sell the property** and apply the proceeds to the real estate taxes, the Farm Credit Services Mortgage and any balance remaining deposited to a separate segregated account subject to the liens of the Internal Revenue Service and Steams County Bank and such other encumbrances as may be ascertained upon an examination of the title as applicable. The precise legal description of the property to be sold be supplied [sic] not later than the date scheduled for the hearing.

*(Emphasis added)*

"Exhibit A," to the motion was the Purchase Agreement. Thereafter, the Trustee dealt with Thousand Acres with reference to the Property in recognition of the Purchase Agreement consistently, including retention of the earnest money, obtaining subsequent orders to facilitate the survey and platting contingencies, and scheduling a closing.[2] The Plan identified the Property as property to be sold to Thousand Acres for $200,000. While the Plan made no reference to the Agreement, reference was unnecessary. The Trustee was legally bound by the Purchase Agreement. *In re Furst,* 57 B.R. 1013, 1015 (E.D.Pa.1986). The Plan did not contradict, nor was it inconsistent with, that obligation.

■ The Debtor argues that the Purchase Agreement is an "executory contract" of the type that must be assumed under 11 U.S.C. § 365, that no assumption was made by the Trustee, and that by terms of the confirmed Plan the Agree-

---

**2.** The Trustee made no attempt to return the earnest money until May 21, 2003. Thousand Acres refused to accept the proffered return at that time.

ment was rejected. Article VIII of the Plan provides.

Certain executory contracts and unexpired leases have been or will be assumed as provided in this Plan and in the attached Exhibit D to this Plan..... **All executory contracts and unexpired leases of Debtor not listed in Exhibit D and not otherwise specifically dealt with elsewhere in this Plan are rejected** on the date that the Court's order confirming the Plan becomes a Final Order. The Debtor will tender for return any property subject to a rejected executory contract or unexpired lease immediately upon the Effective Date. The date 30 days after the date that the Court's order confirming the Plan is entered is fixed as the time within which a proof of claim must be filed for any claim arising from the rejection of an executory contract or unexpired lease, unless the Court by order has set an earlier date.

*(Emphasis added)*

11 U.S.C. § 365 has no application to the Purchase Agreement. Section 365 applies to pre-petition executory contracts entered by a debtor, not post-petition executory contracts entered by a debtor's estate. Trustees are liable for post-petition executory contracts for the sale of real estate the same as any other party, including specific performance. *In re North Broadway Funding Corp.*, 6 B.R. 133 (Bankr. E.D.N.Y.1980).

EXHIBIT D

**SALE OF REAL PROPERTY SCHEDULE**

| 31? | Gila Co. | Frasbour | 8-7-01 | 7-3-01 | $80,000 | Thomas/First American: $63,800 | $8,683.85 | |
| 3 | Kroger (Portion) | Serdahl | 10-1-01 | 10-8-01 | $90,000 | | $88,012.33 | |
| 16 | Ralph Kreger | Gerald Brummer | 4-26-02 | 4-5-02 | $290,000 | - | $267,077.49 | |
| 16 | Ralph Kreger | Gerald Brummer | 4-26-02 | 4-5-02 | $80,000 | - | $72,732.19 | |
| 16 | Ralph Kreger | Gordy Rohberg | 4-5-02 | 4-10-02 | $180,000 | - | $164,268.89 | |
| 10, 11, 15 | Bauer, Wm. Graen, Usher | Co-op Home | 4-5-02 | 4-8-02 | $1,404,000 | Farm Credit: $693,854.48 Anoka Co. Green Acres: $601,374 | $0 | |
| 2 | Sumpser | Gold Nugget | 4-26-02 | 4-26-02 | $990,000 | Village Bank $837,031.47 | $76,438.07 | |
| 22 | Aron Nelson | Ingalls | 3-29-02 | 4-26-02 | $51,500 | Midwest/UAP: $40,335.91 | $0 | |
| 22 | Aron Nelson | LSPI Exchange | 4-26-02 | 4-30-02 | $300,000 | Midwest/UAP: $214,180.99 | $80,615.59 | |
| 19 | Mallard Ridge | Randy Hanson | | 4-30-02 | $900,000 | Farm Credit $760,361.12 | $44,587.82 | Farm Credit unsecured claim of $81,980 |
| 12 | Quigley (Portion) | Peterson | 8-8-02 | 7-25-02 | $890,000 | - | $814,298.23 | |
| 18 | Ott (Portion) | Co-op Homes | 7-9-02 | 12-18-02 | $533,140 | $5,000 escrowed for Otis | $483,093.09 | |
| 33 | Homestead (Portion) | Thousand Acres | 11-26-02 (amending 9-13-01) | Pending | $200,000 | Farm Credit: approx. $200,000 | $0 | |
| 35 | Arizona Homestead (Portion) | Holliday | 12-11-02 | Pending | $35,000 | | $28,720.87 | |
| 8 | Nouthen (Portion) | Rick Schermer | 12-23-02 | 1-3-03 | $3,785,930 | Farm Credit: $992,446.93 | $2,312,219.54 | |

Even if 11 U.S.C. § 365 applied, the argument that the Plan does not provide for the assumption of the Purchase Agreement is strained. As recited above, Article VIII of the Plan provided that "Certain executory contracts and unexpired leases have been or will be assumed as provided in this Plan and in the attached Exhibit D to this Plan." Exhibit D is reproduced below:

Parcel 33 shown in the exhibit is the Property.

*Failure of Thousand Acres to fulfill the contingencies by June 29, 2001.*

▮ Thousand Acres argues that the contingencies were for its sole benefit and

that it waived the timing requirement for survey, platting and approval by appropriate county officials. Defendant Debtor claims that the contingencies were for the mutual benefit of the parties, and that the contingencies cannot be waived by only one of the parties under those circumstances. Finally, the Debtor argues that whether the contingencies were for the sole benefit of the Plaintiff is a question of material fact.

It is irrelevant here whether the contingencies were for the benefit of one or both parties. Clearly, both parties to a contract can waive its contingencies. The Trustee, who is the real party in interest to the Agreement along with Thousand Acres, clearly waived the timing requirement of the contingencies. He sought and obtained two additional orders after becoming the real party in interest, in November 2002 and January 2003, to facilitate Thousand Acre's fulfillment of the contingencies. Furthermore, after the plat was finally approved in 2003, and the contingencies had been fulfilled, the Trustee participated in scheduling a closing of the sale. The Purchase Agreement was not rendered null and void because of failure of Thousand Acres to meet the survey and platting contingencies by June 29, 2001.

### No Issues of Material Fact And Summary Judgment Appropriate.

Defendant Debtor argues that summary judgment is premature because he has not had an opportunity to conduct discovery. But, he identifies no relevant material facts that are arguably in dispute.[3] The Trustee filed affidavits that indicated his ordinary approach to real estate contracts differ in some respects from the seller's obligations under the Purchase Agreement. For instance, he testified that it is not his practice to deliver a warranty deed. But, the Trustee does not argue that he did not adopt the Agreement as his own, or that he did not rely on its validity and enforceability as the document behind the transaction. These arguments are made by Defendant Debtor, who was never a real party in interest to the Agreement; they are not seriously made by the Trustee. The Trustee's argument is largely a legal one, based on his interpretation of the Plan and his belief that the Property reverted to the Debtor on the effective date of the Plan, leaving him without the ability to close the sale and convey the Property. Summary Judgment is appropriate.

### Specific Performance is Appropriate.

■ The Debtor argues that the Property reverted to him on the effective date and that the reversion was free and clear of Plaintiff's interest under the Purchase Agreement. Article X of the Plan provides, in part:

> . . . all property of Debtor and the estate vests in Debtor on the date that the order confirming the Plan becomes a Final Order. All property of Debtor and the estate is dealt with by this Plan; therefore, on the date that the order confirming the Plan becomes a Final Order, **all property of Debtor and the estate is free and clear of all liens, encumbrances, claims and interest of creditors of Debtor** *except to the extent the Plan explicitly provides that*

---

**3.** Debtor argues that discovery of the reasons for delay of closing the sale are important in considering whether specific performance is appropriate. However, neither the Trustee nor the Debtor complained of any alleged delay before these proceedings, and the Debtor did not object to the scheduling of the February 26 closing. Delay is simply not an equitable issue.

*such liens, encumbrances, claims or interests are retained.*

*(Emphasis added)*

The Trustee also argues that the Property reverted to the Debtor on its effective date, and that the Trustee no longer has the authority to close the sale and convey the Property. However, Article V(B) of the Plan specifically provides for the "Plan Administrator" to complete land sales, and Article V(F) contemplates sales "from and after the Effective Date." Article I of the Plan defines "Plan Administrator" as the Trustee.

■ Whether or not the Property reverted to the Debtor, it remains subject to the interest of Thousand Acres under the Purchase Agreement, consummation of which was specifically provided for under Article VIII of the Plan by sale of the Property. Defendants' argument that the Plan provided for, but did not require, sale of the Property, and did not recognize and provide for consummation of the Purchase Agreement, amounts to a *"sleight of hand"* interpretation of the Plan after the fact that would unjustly deprive Thousand Acres of a valuable property interest. Plans should be interpreted reasonably, in light of ordinary course dealings and reasonable expectations of the parties; they should not be interpreted by manipulation of provisions to produce unintended consequences to leverage personal advantage.

■ Land has consistently been treated as unique under Minnesota law. While the remedy of specific performance of enforceable real estate purchase/sale agreements is not automatic,[4] the remedy will ordinarily lie where performance is feasible. *Thompson v. Kromhout,* 413 N.W.2d 884, 885 (Minn.App.1987).

In an action to compel performance of a contract to convey real property, it is

well established that both the vendee and vendor have a right to specific performance of the contract. *Kennedy v. Hasse,* 262 Minn. 155, 161, 114 N.W.2d 82, 86–87 (1962). In *Abbott v. Moldestad,* 74 Minn. 293, 77 N.W. 227 (1898) the Minnesota Supreme Court reasoned that since a vendee may bring suit in equity to compel execution and delivery of deed, a vendor may also bring similar suit to enforce the undertaking of the vendee, although the substantial part of vendor's relief is recovery of money. *Id.* at 299, 77 N.W. at 229.

Courts consider five factors in determining whether to grant specific performance of a real estate purchase agreement:

(a) the contract must be established by clear, positive, and convincing evidence;

(b) it must have been made for an adequate consideration and upon terms which are otherwise fair and reasonable;

(c) it must have been induced without sharp practice, misrepresentation, or mistake;

(d) its enforcement must not cause unreasonable or disproportionate hardship or loss to the defendants or to third persons; and

(e) it must have been performed in such a manner and by the rendering of services of such a nature or under such circumstances that the beneficiary cannot be properly compensated in damages.

*Saliterman v. Bigos,* 352 N.W.2d 494, 496 (Minn.App.1984).

■ Here, the Purchase Agreement was enforceable at all times after its adoption by the Trustee as the real party in interest seller, and it remains enforceable. The

---

4. *See Dakota County H.R.A. v. Blackwell,* 602 N.W.2d 243 (Minn.1999).

Property is to be sold under Article VIII of the Plan, as referenced in Exhibit D, pursuant to a binding Purchase Agreement between the Trustee and Thousand Acres. This is an ordinary course, arms length transaction. The only unusual factor is the increase in value of the Property from the time the Purchase Agreement was entered. However, increase in value is not an equitable defense against specific performance. *Ross v. Carroll,* 156 Minn. 132, 194 N.W. 315, 316 (1923).

Defendant contends that plaintiff's demand for specific performance of the contract is inequitable and unconscionable and should be denied on that ground. Courts sometimes refuse to enforce contracts on that ground. *Bredeson v. Nickolay,* 147 Minn. 304, 180 N.W. 547 [(1920)]. But they cannot do so arbitrarily; nor because they may deem the contract unwise; nor because subsequent events disclose that it will result in a loss to the defendant. To justify refusing specific performance on this ground where there is no mistake and the contract was deliberately entered into, it must appear that the defendant has been misled and overreached to such an extent that the contract is unconscionable.

There is simply no lawful or equitable reason why the Purchase Agreement should not be specifically enforced. All contingencies have been fulfilled and Plaintiff is ready, willing and able to close the transaction. The Debtor is obligated to cooperate in consummation of the Plan, and neither the Trustee nor the Debtor has provided a satisfactory explanation why they should be relieved of the obligation to consummate the sale of the Property under the Purchase Agreement.

## III.

Accordingly, for the reasons discussed above, the Plaintiff Thousand Acres Development, LLC., is entitled to judgment against the Defendants for specific performance of the Purchase Agreement entered by Defendant Lawrence A. Kreger and Thousand Acres on May 10, 2001, and later adopted by the Trustee as the real party in interest seller, which Agreement is attached to the Trustee's motion for authorization to sell property filed on June 1, 2001.

### IT IS HEREBY ORDERED:

1. The real property that is the subject of this Court's orders of September 13, 2001, November 26, 2002, and January 18, 2003, is subject to an enforceable purchase agreement in favor of Plaintiff Thousand Acres, LLC., entered by Defendant Lawrence Kreger on May 10, 2001, and subsequently adopted by Defendant Trustee Michael J. Iannacone.

2. Defendants Michael J. Iannacone, Lawrence A. Kreger, and Robin Kreger shall specifically perform that Purchase Agreement affecting the property identified in paragraph 1 above, initially entered by the Debtor as seller and thereafter adopted by the Trustee as the real party in interest seller. The Defendants shall join in an appropriate instrument of conveyance of title in consummation of the Purchase Agreement.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**